[No. C037628. Third Dist. Oct. 2, 2002.]

THEODORE KELLOGG et al., Plaintiffs and Appellants, v.
RONALD GARCIA et al., Defendants and Respondents.

**COUNSEL**

Law Offices of Kenneth M. Foley and Kenneth M. Foley for Plaintiffs and Appellants.

Law Offices of David S. Thomas and David S. Thomas for Defendants and Respondents.

## OPINION

**KOLKEY, J.**—Plaintiffs Theodore and Sylvia Kellogg (the Kelloggs) were gifted a landlocked parcel, which requires that they use a private road that crosses their neighbors' properties in order to gain access to the property. Defendants Ronald and Judith Garcia (the Garcias) deny that the Kelloggs have a right to use the private road that traverses their property for purposes of such access. The Kelloggs sued to quiet title, claiming an implied or express easement over the Garcias' and their other neighbors' properties. Following trial, the trial court ruled in favor of the Garcias.

Under the law, "[a]n easement by way of necessity arises . . . when it is established that (1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity." (*Moores v. Walsh* (1995) 38 Cal.App.4th 1046, 1049 [45 Cal.Rptr.2d 389] (*Moores*).)

Relying on *Bully Hill Copper Mining & Smelting Co. v. Bruson* (1906) 4 Cal.App. 180 [87 P. 237] (*Bully Hill*), the trial court ruled in this case that an easement by way of necessity cannot arise where the only common owner of the two subsequently conveyed properties was the federal government.

We disagree and shall reverse. Current case law holds that the federal government may be the common owner of the properties whose conveyance gives rise to the strict necessity that justifies an easement by way of necessity. (See *Moores, supra,* 38 Cal.App.4th at p. 1049, fn. 1.) Commentators and courts alike have opined that this conclusion is consistent with the public policy that underlies the establishment of an easement by necessity, which is to promote the productive use of land. Such a policy makes no distinction between landlocked parcels originally owned by a public, rather than a private, party. Accordingly, we conclude that the Kelloggs have established the requisite conditions for an easement by necessity across the Garcias' property so that they can reach their parcel.

### FACTUAL AND PROCEDURAL BACKGROUND

#### I. *The Facts*

At the time of trial, the Kelloggs were owners of a property in Calaveras County, known as the Chino Quartz Mine. A road ran north (the north road)

from the Chino Quartz Mine across another property owned by the Kelloggs (known as the Wild Rose Mine), and then over several properties owned by other private parties—the Rollinses, the Walshes, the Stones, and the Garcias—before it reached Jurs Road, a county road. The Garcias own the property adjacent to Jurs Road.

 The evidence at trial showed that in 1878, the United States conveyed the Chino Quartz Mine by patent to F. Novella.[1] The property surrounding the Chino Quartz Mine, including the property currently owned by the Garcias, was federal land—a point that the Garcias concede in their brief.[2] Any roads that would have existed in the area—including any road across what is now the property of the Walshes, the Stones, and the Garcias—would have been on land owned by the federal government. No evidence, however, suggested that the north road existed in 1878 or indicated how access was obtained in 1878 from the Chino Quartz Mine to any public road.

In 1944, plaintiff Sylvia Kellogg's parents purchased the Chino Quartz Mine. By 1945, the Kellogg family was using the north road to travel between the Chino Quartz Mine and Jurs Road.

In 1957, the federal government transferred the Wild Rose Mine by patent to Sylvia Kellogg's parents. The Wild Rose Mine surrounded the Chino Quartz Mine.

In 1987, as a result of a gift from Sylvia Kellogg's father, the Kelloggs (with their son, Craig Kellogg) became the owners of the Chino Quartz Mine. And in 1991, the Kelloggs and their son became the owners of the Wild Rose Mine in the same manner. The total property is 42 acres, with the Chino Quartz Mine accounting for 10 acres and the Wild Rose Mine for 32 acres.

## II. *The Lawsuit*

The Kelloggs brought a quiet title action, claming a right-of-way easement over the north road from the Chino Quartz Mine to Jurs Road. They

[1] A patent is defined as: "2.a. A grant made by a government that confers on an individual fee-simple title to public lands. b. The official document of such a grant. c. The land so granted." (American Heritage Dict. (3d ed. 1992) p. 1326.)

[2] The Garcias' brief states: "The CHINO QUARTZ MINE was originally granted to F. NOVELLA by the UNITED STATES government by patent in 1878. At that time, all of the surrounding land, including the land owned at trial by all of the parties[,] was owned by the UNITED STATES government."

sued all the property owners of the land traversed by that road, except the Rollinses, who had granted the Kelloggs an easement.[3]

At trial, the Kelloggs advanced several theories to support the existence of the easement, including an easement by way of necessity. After a bench trial, the court ruled in favor of the Garcias on all theories, rejecting, among other things, the Kelloggs' claim of an easement by way of necessity.

Because we shall reverse that part of the court's ruling addressing the Kelloggs' right to an easement by way of necessity, we shall only recite the court's findings on that issue. The court made the following factual findings relevant to that theory:

"(1) No evidence was presented as to whether the United States of America[] was the common owner of all of the land between the CHINO QUARTZ MINE parcel and the land where JURS ROAD is now located at the time said mine was granted to F. NOVELLA.

"(2) No evidence was presented as to whether either JURS Road or the north road across the land now owned by defendants WALSH, STONE[,] and GARCIA existed at the time the CHINO QUARTZ MINE was granted to F. NOVELLA.

"(3) No evidence was presented as to where any access to the CHINO QUARTZ MINE was located prior to 1944.

"(4) Evidence was presented to show that the CHINO QUARTZ mine was in active production after the grant from the UNITED STATES OF AMERICA and prior to 1944.

"(5) Apart from the original public ownership by the UNITED STATES, no evidence was presented to show that there was any common ownership of the parcels of real property owned by the plaintiffs and the parcels of real property owned by defendants WALSH, STONE[,] and GARCIA.

"(6) Evidence was presented as to the existence of the north road at the time of the grant of the WILD ROSE MINE to [Sylvia Kellogg's father], but there was no common ownership of the parcel conveyed to [her father] and the parcels owned by defendants WALSH, STONE[,] and GARCIA at the time of that conveyance."

---

[3]The Kelloggs subsequently filed two amended complaints also naming, as additional defendants, property owners lying to the south of their property, as another road runs south from the Chino Quartz Mine to Fay Street, which road crosses property owned by the Moores. The trial court found that there was insufficient evidence to impose an easement over the Moores' property under any legal theory. That ruling has not been challenged in this appeal.

The court then made its legal conclusions concerning the Kelloggs' failure to establish an easement by way of necessity:

"(2) An easement by necessity can exist when a landowner sells one of two or more parcels and the parcel sold is completely landlocked by the remaining property of the grantor, or partly by the land of the grantor and partly by the land of others. In that case, the law will create an easement across the remaining land of the grantor in order to benefit and provide access to the property conveyed. [Citation.]

"(3) Original ownership by the United States does not constitute the necessary unity of ownership to support an easement by implication or necessity (*Bully Hill* [*supra,* 4 Cal.App. at p. 183], and 94 [A.L.R.3d] 502, 517-518)."[4]

The court also rejected the Kelloggs' alternative theories for an easement.

The Kelloggs filed a timely appeal from the judgment entered in favor of the Garcias.

### DISCUSSION

### I. *Standard of Review*

■ The trial court's decision that the Kelloggs did not have an easement by way of necessity presents a mixed question of fact and law for purposes of our review. This requires that we review the court's factual findings under the substantial-evidence test and the court's legal reasoning de novo:

"Questions of fact concern the establishment of historical or physical facts; their resolution is reviewed under the substantial-evidence test. Questions of law relate to the selection of a rule; their resolution is reviewed independently. Mixed questions of law and fact concern the application of the rule to the facts and the consequent determination whether the rule is satisfied. If the pertinent inquiry requires application of experience with human affairs, the question is predominantly factual and its determination is reviewed under the substantial-evidence test. If, by contrast, the inquiry requires a critical consideration, in a factual context, of legal principles and their underlying values, the question is predominantly legal and its determination is reviewed independently." (*Crocker National Bank v. San Francisco*

---

[4]The full annotation cited by the court is: Annotation, What Constitutes Unity of Title or Ownership Sufficient for Creation of an Easement by Implication or Way of Necessity (1979) 94 A.L.R.3d 502, 517-518, § 9[c]. The annotation cites *Bully Hill, supra,* 4 Cal.App. 180.

(1989) 49 Cal.3d 881, 888 [264 Cal.Rptr. 139, 782 P.2d 278] (*Crocker*); accord, *In re Marriage of Lehman* (1998) 18 Cal.4th 169, 184 [74 Cal.Rptr.2d 825, 955 P.2d 451].)

The trial court's determination that an easement by necessity did not exist because "[o]riginal ownership by the United States does not constitute the necessary unity of ownership to support an easement by . . . necessity" presents a legal question. We review it independently. The pertinent inquiry requires critical consideration of legal principles and their underlying values. (*Crocker, supra,* 49 Cal.3d at p. 888; see also *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799-801 [35 Cal.Rptr.2d 418, 883 P.2d 960].)

On the other hand, the trial court's finding that there was no evidence that the federal government was the common owner of all the property between the Chino Quartz Mine and Jurs Road in 1878 is a factual question, which we review to determine if it is supported by substantial evidence. (*Crocker, supra,* 49 Cal.3d at p. 888; 9 Witkin, Cal. Procedure (2002 supp.) Appeal, § 319, p. 87; see also *Western States Petroleum Assn. v. Superior Court* (1995) 9 Cal.4th 559, 571 [38 Cal.Rptr.2d 139, 888 P.2d 1268].)

## II. *Elements of an Easement by Way of Necessity*

■ The circumstances for the creation of an easement by necessity in California are well known: "An easement by way of necessity arises by operation of law when it is established that (1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity." (*Moores, supra,* 38 Cal.App.4th at p. 1049; accord, *Roemer v. Pappas* (1988) 203 Cal.App.3d 201, 205-206 [249 Cal.Rptr. 743] (*Roemer*); *Daywalt v. Walker* (1963) 217 Cal.App.2d 669, 672 [31 Cal.Rptr. 899] (*Daywalt*); *Reese v. Borghi* (1963) 216 Cal.App.2d 324, 332-333 [30 Cal.Rptr. 868] (*Reese*).)

A way of necessity " 'is of common-law origin and is supported by the rule of sound public policy that lands should not be rendered unfit for occupancy or successful cultivation. Such a way is the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses. *Thus, the legal basis of a way of necessity is the presumption of a grant arising from the circumstances of the case. This presumption of a grant, however, is one of fact, and whether a grant should be implied depends upon the terms of the deed and the facts in each particular case.*' " (*Daywalt, supra,* 217

Cal.App.2d at pp. 672-673, italics added by *Daywalt*, citing 17A Am.Jur. (1957) Easements, § 58, pp. 668-669.)

Hence, the law " 'never imposes . . . an easement by necessity contrary to the express intent of the parties' " since it is based on an inferred intent arising from the strict necessity of access for the conveyed property. (*Daywalt, supra,* 217 Cal.App.2d at p. 673.)

In addition, "[a way of necessity], having been created by the necessity for its use, cannot be extinguished so long as the necessity exists." (*Blum v. Weston* (1894) 102 Cal. 362, 369 [36 P. 778].) An easement by necessity may persist even though the original grantor and grantee no longer own the properties in question: An "easement of necessity may be asserted by *remote grantees* in the chain of title long after the easement was created by the original common grantor, despite the failure of a prior grantee to exercise the right; and the 5-year statute of limitations on quiet title actions [Code Civ. Proc., §] 318) does not apply." (4 Witkin, Summary of Cal. Law (9th ed. 1987) Real Property, § 459, p. 637, citing *Lichty v. Sickels* (1983) 149 Cal.App.3d 696, 700-701 [197 Cal.Rptr. 137] (*Lichty*).)

However, " 'a right of way of necessity ceases when the owner of the way acquires a new means of access to his estate, as where he acquires other property of his own over which he may pass, or where a public way is laid out which affords access to his premises; and the fact that a former way of necessity continues to be the most convenient way will not prevent its extinguishment when it ceases to be absolutely necessary.' " (*Daywalt, supra,* 217 Cal.App.2d at pp. 676-677; accord, *Moores, supra,* 38 Cal.App.4th at p. 1051.) But the burden of proof that an easement by way of necessity has ceased is on the party opposing the easement "to show by acceptable evidence that a new right of way was in fact made available to the plaintiff." (*Daywalt, supra,* 217 Cal.App.2d at p. 677.)

We now turn to whether the two elements of an easement by way of necessity—(1) a strict necessity for the right-of-way, and (2) common ownership of the servient and dominant tenements at the time of the conveyance giving rise to the necessity—were satisfied here.

### III. *The Element of Common Ownership*

As noted, one of the elements of an easement by way of necessity is that the dominant and servient tenements were under the same ownership at the time of the conveyance that gave rise to the necessity. (*Moores, supra,* 38 Cal.App.4th at p. 1049.)

In this case, the trial court found that the common ownership condition was not satisfied, because the original owner of the properties in question was the federal government. Relying on *Bully Hill, supra,* 4 Cal.App. at page 183, the trial court ruled that "[o]riginal ownership by the United States does not constitute the necessary unity of ownership to support an easement by . . . necessity."

In *Bully Hill,* the defendants claimed an easement by necessity for a three-mile wagon road that crossed the plaintiff's land. Although that road was the only manner by which the defendants could reach, by team or wagon, their hotel from any public road (*Bully Hill, supra,* 4 Cal.App. at p. 182), the Court of Appeal stated that "this is far from saying that another road to the mines and buildings cannot be constructed over said defendant[s]' lands." (*Id.* at p. 183.) Because the defendants did not show "the vital fact that there [was] no other way to reach the lands or property of defendants" (*ibid.*), the appellate court in *Bully Hill* refused to sustain the defendants' claim of an easement by necessity. It concluded: "[T]he facts essential to the existence of a way of necessity were not established by the evidence or found by the court. 'The right of way from necessity must be in fact what the term naturally imports and cannot exist except in cases of strict necessity. It will not exist when a man can get to his property over his own land. That the way over his own land is too steep or too narrow or that other and like difficulties exist, does not alter the case, and it is only when there is no way through his own land that a grantee can claim a right over that of his grantor. It must also appear that the grantee has no other way.' [Citation.]" (*Ibid.*)

However, the court in *Bully Hill* also noted that "[t]here is nothing in this record to show that the relation of grantor and grantee ever existed between the plaintiff and any of the defendants. The mere fact that all of the land was originally part of the public domain and hence owned by a common grantor, cannot confer the peculiar right out of which a way of necessity arises. If, however, it be fully conceded that all other basic facts essential to a way from necessity existed, the vital fact that there is no other way to reach the lands or property of defendants is lacking." (*Bully Hill, supra,* 4 Cal.App. at p. 183.)

In this case, the trial court and the Garcias rely on the *Bully Hill* court's statement that "[t]he mere fact that all of the land was originally part of the public domain and hence owned by a common grantor, cannot confer the peculiar right out of which a way of necessity arises" (*Bully Hill, supra,* 4 Cal.App. at p. 183) to bar an easement by way of necessity here.

But *Bully Hill* did not cite any authority for that proposition. Nor did it rely on that statement to reject defendants' claim of an easement by necessity. Instead, it focused on defendants' failure to establish strict necessity, namely, that there was no other way to reach defendants' hotel.

Moreover, *Bully Hill* is in conflict with the current trend in the law and recent California case law.

In *Moores, supra,* 38 Cal.App.4th 1046, the California Court of Appeal for the First Appellate District reached the opposite conclusion from that suggested in *Bully Hill* (although it did not discuss that case specifically). Mr. and Mrs. Moores (the Mooreses) claimed an easement by necessity to cross property owned by William Walsh, which easement was necessary to reach Highway 1 from their property. (*Id.* at p. 1048.) Evidence was presented that the federal government had once owned both properties. (*Ibid.*) The parcel now owned by the Mooreses had been previously conveyed by the federal government to the State of California as a "school lands" grant in 1873, which had left it landlocked on all sides by federal land. (*Ibid.*) The state had subsequently transferred the land to the Regents of the University of California, who had sold it to the Mooreses. (*Ibid.*) The Walsh property consisted of parcels which the federal government had transferred to private owners. (*Ibid.*) After a court trial, judgment was entered for Walsh. (*Ibid.*)

In analyzing the Mooreses' claim that an easement by necessity existed, the appellate court ruled that an easement by way of necessity may arise from lands owned by the federal government. But it concluded that "because the State of California and later [t]he Regents had the power of eminent domain there was no strict necessity for an easement over the Walsh parcel." (*Moores, supra,* 38 Cal.App.4th at p. 1050.) In coming to the conclusion that the power of eminent domain allowed the state to create its own access, it addressed Walsh's contention that "common ownership must be by other than the federal government in order to satisfy the [other] prong of the easement by necessity test" (*id.* at p. 1049, fn. 1), which would have avoided the need to reach the issue of necessity. The court ruled: "More recent cases . . . make it clear that this is not the case. [Citation.] An easement by necessity may exist across lands owned by the federal government. [Citation.]" (*Ibid.*)

In reaching this conclusion, the *Moores* court cited two federal cases that found that an easement by necessity could arise where the federal government conveyed a property landlocked by other federal land: *State of Utah v. Andrus* (D. Utah 1979) 486 F.Supp. 995, 1002, and *Kinscherff v. United States* (10th Cir. 1978) 586 F.2d 159, 161.

Moreover, numerous other cases share that view. (See Bruce & Ely, The Law of Easements and Licenses in Land (2001) Creation of Easements by Implication, ch. 4, § 4:7, pp. 4-19 to 4-20, fn. 25 (hereinafter Bruce & Ely), collecting cases.)

Commentators have likewise concluded that the federal government should be treated the same as a private common owner: "Such an approach is consistent with both theories underlying the easement-of-necessity concept. It furthers the public policy of promoting productive use of land and also is in harmony with the presumption that the parties intended to grant or to reserve an easement to benefit the landlocked parcel." (See Bruce & Ely, *supra,* § 4:7, pp. 4-19 to 4-20; 4 Powell on Real Property (2001) Easements and Licenses, § 34.07[4], pp. 34-59 to 34-60 [cases permitting easements by necessity over federal land represent the "wiser holding" because the "public policy favoring land utilization applies to cases where ownership was in the state as well as where the original unity was in a private person"]; Tiffany, The Law of Real Property (3d ed. 1939) § 793, p. 290 [it is not clear "why a conveyance by the government should be subject to a different rule . . . from a conveyance by a private individual" when, inter alia, "the same considerations of public policy in favor of utilization of the land apply in both cases"].)

We agree. Since an easement by way of necessity is based on the presumption that a conveyance seeks to transfer " 'whatever is necessary for the beneficial use of that property' " (*Daywalt, supra,* 217 Cal.App.2d at p. 673), there is absolutely no reason to impute a different intention to the federal government when conveying western lands (failing an expression of intent to the contrary). After all, particularly in the 19th century—when the West was being settled—the federal government had no reason to render the land it conveyed unfit for occupancy or cultivation. Quite the opposite. "During most of the 19th century, our public land policy was basically one of disposal [of lands owned by the United States] into non-Federal ownership to encourage settlement and development of the country. Those lands most favorably situated for mineral development, agriculture, and townsites were settled first." (U.S. Public Land Law Review Com., One Third of the Nation's Land, A Report to the President and to the Congress (1970) p. 28; see also Yale, Legal Titles to Mining Claims and Water Rights, in California, Under the Mining Law of Congress, of July, 1866 (1867) pp. iv-v, 10-13.) Indeed, California case law recognizes that the doctrine of easements by necessity "*is* founded upon the salutary policy against permitting land to remain in perpetual idleness." (*Roemer, supra,* 203 Cal.App.3d at p. 207, original italics; *Lichty, supra,* 149 Cal.App.3d at p. 703; *Reese, supra,* 216 Cal.App.2d at p. 331; *Daywalt, supra,* 217 Cal.App.2d at p. 672.) Accordingly, looking at both the rationale underlying the doctrine of easement

by necessity and the general purposes of federal conveyances in the 19th century, no reason exists why the conveyance by the federal government in this case should not be given the same presumption afforded other parties, namely, that a conveyance includes whatever is *necessary* for the beneficial use of the land. (See *Daywalt, supra,* 217 Cal.App.2d at pp. 672-673.)

Indeed, the trial court in this case found that "the CHINO QUARTZ mine was in active production after the grant from the UNITED STATES OF AMERICA and prior to 1944." It would make no sense that the federal government would convey title to an active mine to a private party without intending to give the new owner access to the property.

Thus, we agree with the commentators and the Court of Appeal in *Moores* that common ownership by the federal government satisfies the requirement of common ownership under the doctrine of easements by necessity. Neither the public policy nor rationale underlying easements by necessity is served by the creation of a categorical exception for the federal government.[5]

### IV. *Application of the Common Ownership Requirement*

This does not quite end our consideration of the matter, however. We must now determine whether the federal government owned all the surrounding land at the time that the Chino Quartz Mine was conveyed such that it gave rise to a strict necessity for a right-of-way. As mentioned, the trial court found that "[n]o evidence was presented as to whether the United States of America[] was the common owner of all of the land between the CHINO QUARTZ MINE parcel and the land where JURS ROAD is now located at the time said mine was granted to F. NOVELLA."

The parties agree, however, that this finding is not supported by substantial evidence and that the federal government was the common owner of all the land in 1878. Indeed, the trial court's finding is seemingly inconsistent with its other finding that "[a]*part from the original public ownership by the UNITED STATES,* no evidence was presented to show that there was any common ownership of the parcels of real property owned by the plaintiffs and the parcels of real property owned by defendants WALSH, STONE[,] and GARCIA." (Italics added.) And the Garcias concede in their brief that "[t]he CHINO QUARTZ MINE was originally granted to F. NOVELLA by

---

[5]The opposing concern is that an easement by necessity over former federal land "would permit every remote grantee of a portion of the public domain to have an easement by way of necessity over surrounding lands. This argument overlooks the special terminability aspect of easements by necessity upon a change of circumstances. The changed circumstances effectively eliminate the necessity." (4 Powell on Real Property, *supra,* Easements and Licenses, § 34.07[4], p. 34-60, fns. omitted.)

the UNITED STATES government by patent in 1878. At that time, all of the surrounding land, including the land owned at trial by all of the parties[,] was owned by the UNITED STATES government."

And there was substantial evidence that the federal government owned all the land between the Chino Quartz Mine and Jurs Road in 1878. Frank Harrison, a title investigator who had researched the chain of title of the Kellogg, Walsh, Stone, and Garcia properties, testified that in 1878 "the property now owned by Garcia, now owned by Stone, now owned by Walsh, was still all owned by the United States Government." Harrison further agreed that at the time, any roads that existed in the area, "for instance, from Jurs Road . . . currently going through the Garcia property, through the Stone property, through the Walsh property, would have been on United States Government land." Harrison also testified that prior to the 1957 patent, the Wild Rose Mine "was held in the name of the United States Government," and this property surrounded the Chino Quartz Mine.

Accordingly, substantial evidence supports the parties' concession that the land between the Chino Quartz Mine and Jurs Road was owned by the federal government at the time of the 1878 patent. The court's contrary finding is simply not supported by substantial evidence.

Hence, we conclude that the court erred in its finding that the United States was not the common owner of all the relevant parcels in 1878 and in its ruling that the Kelloggs could not make out a claim of an easement by necessity based on the federal government's original common ownership of the Kelloggs' and the Garcias' land.

## V. *Strict Necessity*

Nonetheless, to establish an easement by necessity, the Kelloggs also had to show that a strict necessity for access existed at the time of the conveyance, i.e., that the property was landlocked. (*Daywalt, supra,* 217 Cal.App.2d at p. 672; *Lichty, supra,* 149 Cal.App.3d at p. 699; *Roemer, supra,* 203 Cal.App.3d at p. 206; *Moores, supra,* 38 Cal.App.4th at p. 1049.) The court made no finding on that point.

However, we have already identified evidence in the record showing that the Chino Quartz Mine was landlocked by federal land after it was conveyed in 1878, and the Garcias do not contend otherwise, conceding that all of the surrounding land was owned by the federal government at the time of the 1878 patent. There was a strict necessity for a right-of-way.

At oral argument, however, the Garcias argued that the absence of any evidence that the north road existed or joined Jurs Road in 1878 precludes an easement by necessity. We reject this argument.

 " '[A] way of necessity does not rest on a pre-existing use but on the need for a way across the granted or reserved premises.' " (*Reese, supra,* 216 Cal.App.2d at p. 331.) " '[A]t least in the absence of unusual circumstances, the *failure or delay of a grantee to assert or exercise a right of way by necessity* over his grantor's adjoining premises, where he cannot reach a highway from his property except over lands privately owned, *does not preclude him, or a remote grantee, from subsequently asserting such right.* The question has arisen most frequently where the original grantee failed to assert his right of way by necessity, and thereafter a remote grantee sought to exercise it.' " (*Lichty, supra,* 149 Cal.App.3d at p. 700, italics added by Lichty, quoting Annot. (1941) 133 A.L.R. 1393.) Because an easement by way of necessity is imputed on the basis of the presumption that a party conveys whatever is necessary for the property's beneficial use (*Daywalt, supra,* 217 Cal.App.2d at pp. 672-673) and is founded on the policy against permitting land "to remain in perpetual idleness" (*Lichty,* at p. 703), "*the right to a way of necessity may lie dormant through several transfers* of title and yet pass with each transfer as appurtenant to the dominant estate *and be exercised at any time by the holder of the title.* [Citation.]' " (*Id.* at p. 701, italics added by Lichty.)

Still, although a strict necessity at the time of conveyance can create an easement by way of necessity, it does not preserve it for all time. As noted earlier, an easement by necessity will exist only so long as the necessity exists. (*Lichty, supra,* 149 Cal.App.3d at p. 699; *Daywalt, supra,* 217 Cal.App.2d at pp. 676-677; *Moores, supra,* 38 Cal.App.4th at p. 1051.)

 The evidence in the record here indicates that the Kelloggs had no access to a public road solely over their own land or over another's land through an alternative easement. They remained landlocked at the time of trial.

Admittedly, a map in the record appears to show that the Kelloggs' Wild Rose Mine property on its southern boundary came near Fay Street, located in the Lynn Park Acres subdivision. At trial, Dennis Wiebe, a land surveyor, initially testified that his examination of a subdivision map showed that the Kelloggs' property touched Fay Street and that a driveway could be constructed to the street. But Wiebe then testified that a county assessor's map showed a parcel *between* the Kelloggs' land and Fay Street. And he testified that Fay Street was located in Lynn Park Acres, a private subdivision, and that the Kelloggs would have to obtain an easement for a right of way across the subdivision's streets from the owners of the property along those streets, perhaps as many as 50 of them. Further, Wiebe testified that when he did a

boundary survey for one of the property owners between the Kelloggs' property and Fay Street, he determined that "the existing road did not go into the Kellogg property."

In sum, it was not established that the necessity for an easement no longer existed because of the availability of another route affording access from Fay Street to the property. To the contrary, the trial court held that there was insufficient evidence that the Kelloggs had an easement to Fay Street across the property of the Moores—a ruling not challenged on appeal.

■ The party proposing that strict necessity no longer exists bears the burden of proof on that issue (*Daywalt, supra,* 217 Cal.App.2d at p. 677)—a burden which none of the defendants carried. We also note that none of the defendants argued in their posttrial briefs that the necessity had ceased to exist, and the Garcias do not so contend on appeal.

■ Accordingly, the only reasonable conclusion that can be drawn from the evidence is that a strict necessity existed for a right-of-way: The Chino Quartz Mine was landlocked by federal land when conveyed by patent in 1878 and continued to be landlocked through trial.

## VI. *Conclusion*

Since the Kelloggs' property was landlocked at the time it was conveyed to their predecessor-in-interest, and the dominant and servient tenements were under the same ownership at the time of the conveyance (that of the federal government), an easement by way of necessity arose. And since there was no evidence that the necessity ceased to exist, the Kelloggs are entitled to an easement by way of necessity through the existing roadway that crosses the Garcias' property so that they can access their landlocked property. Of course, if the Kelloggs' necessity ever ceases, the Garcias can seek relief from the easement.

## DISPOSITION

The judgment is reversed and the case remanded to the trial court with directions to enter judgment that the Kelloggs have an easement by necessity

across the Garcias' property. The Kelloggs shall recover their costs on appeal. (Cal. Rules of Court, rule 26(a).)[6]

Sims, Acting P. J., and Raye, J., concurred.

---

[6]In light of our decision that the Kelloggs have an easement by necessity over the Garcias' property for access to Jurs Road, we decline to address their alternative theories in support of the same easement. If that necessity were ever to cease, it would only be because the Kelloggs have obtained an alternative route to their property.