[No. 4960.]

## CONSOLIDATED CHANNEL COMPANY *v.* THE CENTRAL PACIFIC RAILROAD COMPANY et al.

Taking Private Property for a Public Use.—The Legislature cannot, in the exercise of the power of eminent domain, take private property for a purely private industry, such as to enable a person to build a flume on the land of another to carry off the tailings from his mine, or to enable him to deposit the tailings on such land.

Legislative Declaration as to Public Use.—Although, as a general rule, a legislative declaration that a certain business is a public use, for which the right of eminent domain may be exercised, is not open to review by the courts, yet, when it appears plain that property is sought to be taken for a purely private use, courts are not bound by the declaration.

Appeal from the District Court, Fourteenth Judicial District, County of Nevada.

The plaintiff was a corporation, and was the owner of and engaged in working a gold mine on Squirrel Creek, in the

county of Nevada, of the value of sixty thousand dollars, and had expended large sums of money in opening and developing its mine. The grade of Squirrel Creek below the mine was light, and the only practicable method of working the mine was to excavate a ditch, and build a flume through the mine, and for a considerable distance below, so as to carry off the tailings, and then have a place of deposit for the tailings at the end of the flume. In order to do this, it was necessary to pass over and use land belonging to the defendants. This action was commenced in the District Court for the purpose of condemning such land.

The defendants demurred to the complaint, and the court sustained the demurrer. The plaintiff declined to amend, and final judgment was rendered for the defendants. The plaintiff appealed.

*Hamilton & Dunlap*, for the Appellant.

As to whether the legislative determination that a particular use is a public use, within the meaning of the chapter on eminent domain, is open to judicial review. (See *S. & V. R. R.* v. *Stockton*, 41 Cal. 148; Cooley on Const. Lim. 488; *Harding* v. *Goodlett*, 3 Yerg. 53; *Booth* v. *Town of Woodbury*, 32 Conn. 128; *Broadhead* v. *City of Milwaukee*, 19 Wis. 652; *Napa V. R. R. Co.* v. *Napa County*, 30 Cal. 437; *Beekman* v. *Saratoga & Schenectady R. R. Co.*, 3 Paige, 73; *Wilson* v. *Blackbird Creek Marsh Co.*, 2 Pet. 251; 41 Cal. 147; Cooley Const. Lim. 528.)

"Private property can only be taken pursuant to law, but a legislative act, declaring the necessity, being the customary mode in which that fact is determined, must be held for this purpose 'the law of the land,' and no further finding or adjudication can be essential unless the Constitution of the State expressly requires it." (*Kramer* v. *Cleveland & Pittsburg R. R. Co.*, 5 Ohio N. S. 146; cases deciding the constitutionality of acts authorizing mill sites to be condemned under eminent domain; 5 Pick. 294; 23 Id. 220; *Hazen* v. *Essex Co.*, 12 Cush. 477; *Boston & Roxbury Mill Corp.* v. *Newman*, 12 Pick. 467; *Newcomb* v. *Smith*, 1 Chand. (Wis.) 71; *Thien* v. *Voigtlander*, 3 Wis. 461; *Stowell* v. *Flagg*, 11 Mass. 364.)

*Niles Searles, Robert Robinson and Dibble & Byrne*, for the Respondents.

We claim that if our Code has, by a sweeping clause, determined all uses for mining purposes to be "public uses," where, as in this case, the use is manifestly a private one, then under the doctrine, as laid down in *Stockton & Visalia R. R. Co.* v. *City of Stockton* (41 Cal. 169), we may invoke the aid of this Court. (*Curtis* v. *Whipple*, 24 Wis. 350, and American Rep., vol. 1, p. 187; *Whiting* v. *Fond du Lac*, 3 American Rep. 30; *Varick* v. *Smith*, 5 Paige, 159.)

By the Court, NILES, J.:

The plaintiff, by this proceeding, sought to procure, by condemnation, certain lands belonging to the several defendants, to serve as a site for a bed-rock flume to carry the dirt and gravel from its mining claims; and also as a place of deposit for the tailings and refuse matter from its claims.

The demurrer raises the question of the constitutionality of subdivision five of section one thousand two hundred and thirty-eight of the Code of Civil Procedure, authorizing proceedings of this character.

This statute provides that the right of eminent domain may be exercised in behalf of certain enumerated public uses, and in subdivision five names, among other things, "tunnels, ditches, flumes, pipes and dumping-places for working mines; also outlets, natural or otherwise, for the flow, deposit or conduct of tailings or refuse matter from the mines."

It is clear, from the averment of the complaint, that the object sought is the appropriation of the private property of the defendants to the private use of the plaintiff. The proposed flume is to be constructed solely for the purpose of advantageously and profitably washing and mining plaintiff's mining ground. It is not even pretended that any person other than the plaintiff will derive any benefit whatever from the structure when completed. No public use can possibly be subserved by it. It is a private enterprise, to be conducted solely for the personal profit of the plaintiff,

and in which the community at large have no concern. It is clear that this case does not come within the meaning of that clause of the Constitution which permits the taking of private property for a public use after just compensation made.

In the case of *Loan Association* v. *City of Topeka* (20 Wall. 655), the defendant, acting under the authority of an act of the Legislature of Kansas, had issued certain bonds to the plaintiff as a donation to encourage that company in its design of establishing a manufactory of iron bridges in that city. The act gave to the city council "power to encourage the establishment of manufactories, and such other enterprises as may tend to develop and improve such city, either by direct appropriation from the general fund, or by the issuance of bonds of such city in such amounts as the council may determine."

The court held that the purpose for which the bonds were issued was not of a public character; that the statute authorizing their issue was unconstitutional and void, and that no lawful tax could be levied for their payment. Mr. Justice Miller said, in announcing the opinion of the court: "If it be said that a benefit results to the local public of a town by establishing manufactures, the same may be said of any other business or pursuit which employs capital or labor. The merchant, the mechanic, the innkeeper, the banker, the builder, the steamboat owner, are equally promoters of the public good, and equally deserving the aid of the citizens by forced contributions. No line can be drawn in favor of the manufacturer which would not open the coffers of the public treasury to the importunities of two-thirds of the business men of the city or town."

The reasoning of that opinion is applicable to the present case. It is not competent for the Legislature to authorize the levy of a public tax, or the taking of private property for the encouragement of a purely private industry.

But it is contended by the counsel for the plaintiff that the statute referred to (Sec. 1238, subd. 5, C. C. P.) is a legislative declaration that the construction of ditches, flumes and dumping-places for working mines, are public

uses, in behalf of which the right of eminent domain may be exercised; and they invoke the doctrine that the judgment of the Legislature upon such questions is conclusive, and is not open to review by the judicial department of the Government. Without doubt it is the general rule that where there is any doubt whether the use to which the property is proposed to be devoted is of a public or private character, it is a matter to be determined by the Legislature, and the courts will not undertake to disturb its judgment in this regard. This question was fully discussed, and the doctrine established, in the case of *S. & V. R. R. Co.* v. *City of Stockton* (41 Cal. 147). But in the same case an exception to the general rule is recognized. It is said: "A case might, indeed, be presented in which it might appear, beyond the possibility of a question, that a tax had been imposed, or the property of a citizen had been taken for a use or purpose in no sense public; or, in the language of Chancellor Walworth (5 Paige, 159), 'where there was no foundation for a pretense that the public was to be benefited thereby;' and in such case it would be our duty to interfere and afford relief."

It would be difficult to suppose a case more completely within the exception stated, and in which the absence of all possible public interest in the purposes for which the land is sought to be condemned is more clear and palpable, than in the case at bar.

We are of the opinion that the demurrer was properly sustained.

Judgment affirmed.