[No. A068137. First Dist., Div. Three. Sept. 28, 1995.]

WILLIAM M. MOORES et al., Plaintiffs and Appellants, v.
WILLIAM D. WALSH, Defendant and Respondent.

**COUNSEL**

Johnson & DeMarchi and Thomas F. Johnson for Plaintiffs and Appellants.

Leonard J. LaCasse and Madeline D. Sager for Defendant and Respondent.

**OPINION**

**MERRILL, J.**—Appellants William M. and Tona E. Moores brought this action for declaratory and injunctive relief, claiming that they had an easement over property owned by respondent William D. Walsh. Following a court trial, judgment was entered in favor of respondent. We affirm.

## I.

### BACKGROUND

In 1993, appellants purchased a 40-acre parcel of unimproved land (the Moores parcel) in Mendocino County from the Regents of the University of California (The Regents), pursuant to a public bidding process, for the purpose of logging the timber on the property. Bid documents provided by The Regents regarding the Moores parcel provided that "there may not currently be any legal surface access to the Property." Respondent William Walsh owns property on three sides of the Moores parcel, to the north, west, and south (the Walsh parcel). Other private parties own the property to the east of the Moores parcel. Part of the Walsh parcel is between the Moores parcel and Highway One. Appellants claim an easement to cross over the Walsh parcel to Highway One for all purposes, including logging. There was no evidence that prior owners of the Moores parcel ever claimed such an easement.

Evidence was presented that the Moores parcel and the Walsh parcel were once both owned by the federal government. The Moores parcel was granted to the State of California by the United States as part of a "school lands" grant in 1873, leaving it landlocked on all sides by federally owned land. The state conveyed the property to The Regents in 1978. The Walsh property consists of what was once six parcels conveyed by the United States to private owners between 1874 and 1881.

II.

DISCUSSION

A. *Easement by Implication*

 Appellants contend that an easement arose by implication over respondent's land. An easement by implication requires the following conditions: "1. There must be a common ownership of a parcel and a transfer or conveyance of one parcel, or a portion of a parcel, to another. [¶] 2. Prior to the division of title, there must have been an existing obvious, and apparently permanent, use of the quasi-easement by the common owner. [¶] 3. The easement must be reasonably necessary to the use and benefit of the quasi-dominant tenement." (5 Miller & Starr, Cal. Real Estate (2d ed. 1989) § 15:20, p. 454; *Mikels* v. *Rager* (1991) 232 Cal.App.3d 334, 357 [284 Cal.Rptr. 87].)

No evidence was presented that prior to the division of title in 1873 there was an existing and obvious use of any easement over respondent's property. Appellants' claim of an easement by implication fails because, as appellants concede, they "can not show [obvious] use of the easement."

B. *Easement by Necessity*

 Appellants also claim that they have an easement by necessity. An easement by way of necessity arises by operation of law when it is established that (1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity. (*Roemer* v. *Pappas* (1988) 203 Cal.App.3d 201, 205-206 [249 Cal.Rptr. 743].)

 Here, evidence was received that prior to the conveyance of the Moores parcel in 1873, the claimed dominant and servient tenements were both owned by the federal government.[1] In 1873, the Moores parcel was conveyed by the federal government to the State of California, leaving it landlocked on all sides by federally owned land. Appellants contend that this is sufficient to satisfy the strict necessity requirement.

---

[1]Respondent contends that common ownership must be by other than the federal government in order to satisfy the second prong of the easement by necessity test. More recent cases, however, make it clear that this is not the case. (See *State of Utah* v. *Andrus* (D.Utah 1979) 486 F.Supp. 995, 1002.) An easement by necessity may exist across lands owned by the federal government. (*Kinscherff* v. *United States* (10th Cir. 1978) 586 F.2d 159, 161.) Respondent then argues alternatively that there was insufficient evidence that the federal government was a common grantor of the parcels in question. Given our holding that there is

Respondent maintains, however, that because the State of California and later The Regents had the power of eminent domain there was no strict necessity for an easement over the Walsh parcel. Respondent cites *Leo Sheep Co.* v. *United States* (1979) 440 U.S. 668 [59 L.Ed.2d 677, 99 S.Ct. 1403] in which the court found that an easement claimed by the federal government over land it had conveyed was "not actually a matter of necessity . . . because the Government has the power of eminent domain. Jurisdictions have generally seen eminent domain and easements by necessity as alternative ways to effect the same result. . . . For similar reasons other state courts have held that the 'easement by necessity' doctrine is not available to the sovereign." (*Id.* at pp. 670-680 [59 L.Ed.2d at pp. 680-686], fns. omitted.)

In response, appellants argue that *State of Utah* v. *Andrus, supra,* 486 F.Supp. 995 compels a different result. In *Andrus* the State of Utah and its lessee claimed that an easement by necessity existed over federal lands which surrounded the state-owned parcel. The United States had granted the parcel to the State of Utah under a state school land grant, by which the federal government granted lands to the states to use as a means of generating revenue for education. The court held that "[g]iven the rule of liberal construction [of legislation dealing with school trust land] and the Congressional intent of enabling the state to use the school lands as a means of generating revenue, the court must conclude that Congress intended that Utah (or its lessees) have access to the school lands. Unless a right of access is inferred, the very purpose of the school trust lands would fail. Without access the state could not develop the trust lands in any fashion and they would become economically worthless." (*State of Utah* v. *Andrus, supra,* 486 F.Supp. at p. 1002.) The court found that an easement by necessity existed over the federal lands,[2] noting that *Leo Sheep* did not apply because the State of Utah and its lessee did not have the power to condemn the federal land in question. (*State of Utah* v. *Andrus, supra,* 486 F.Supp. at p. 1002, fn. 11.)

Appellants' reliance on *Andrus* is misplaced. In 1873, the Moores parcel was transferred to the State of California by the United States, and what is now the Walsh parcel was owned by the United States. As in *Andrus,* the

---

no easement by necessity even if the federal government were the common grantor, we need not reach this issue.

[2]Contrary to appellants' contention, neither *Andrus* nor the cases cited therein set forth an implied easement theory unique to school land grants. Additionally, appellants' claim that *Andrus* mandates an easement over respondent's land because otherwise the land would be economically useless, in contravention of the purpose of the school land grants, is belied by the fact that The Regents were able to sell the land in question pursuant to a public bidding process without any claim or warranty of access, and there were nine bidders. (See *Lake Pleasant Group* v. *U. S.* (1994) 32 Fed.Cl. 429, 440.)

state presumably could not have exercised its power of eminent domain against the federal government. However, even if a right to an easement by necessity arose in 1873, such an easement "only continues while the necessity exists." (*Lichty* v. *Sickels* (1983) 149 Cal.App.3d 696, 699 [197 Cal.Rptr. 137]; see *Carey* v. *Rae* (1881) 58 Cal. 159, 163; *Daywalt* v. *Walker* (1963) 217 Cal.App.2d 669, 676-677 [31 Cal.Rptr. 899].) When the claimed servient tenement owned by the federal government was later transferred to private owners, any easement by way of necessity was extinguished because the state could then exercise its power of eminent domain. Thus, when appellants purchased the property from The Regents they acquired no easement over the Walsh parcel because The Regents had no easement to convey.

The judgment is affirmed.

Chin, P. J., and Parrilli, J., concurred.

A petition for a rehearing was denied October 23, 1995.