[No. S159489. Apr. 27, 2009.]

CHERYL C. MURPHY, Plaintiff and Respondent, v.
ROGER BURCH et al., Defendants and Appellants.

**COUNSEL**

Petersen Law Offices, Thomas E. Owen and Robert C. Petersen for Defendants and Appellants.

Carter, Vannucci & Momsen, Jared G. Carter and Brian C. Carter for Plaintiff and Respondent.

OPINION

**BAXTER, J.**—This is a quiet title action between owners of adjoining properties. In 1998, plaintiff purchased property having no vehicular access to or from any public road. Because her property is "landlocked," she seeks to establish, without payment of consideration to defendants, an "easement by necessity" over an existing private road that crosses defendants' property and connects to a public highway. Under California common law, such an easement requires examination of the circumstances of the original convey- ance by the "common owner" that severed what is now defendants' property from what is now plaintiff's landlocked property. In this case, the federal government was that common owner, and it first conveyed defendants' property without expressly reserving a right of access to plaintiff's property, which it retained. The question is whether a right of access nonetheless arose by implication based on the circumstances surrounding that conveyance, including whether or not a strict necessity for access resulted and the inferences reasonably drawn regarding the parties' intent.

Given the distinctive nature and history of federal land grants and the government's power of eminent domain, we hold that extreme caution must be exercised in determining whether an access easement arises by implication when common ownership is traced back to a federal grant made without an express reservation for access. We conclude, based on the stipulated facts presented at trial, that the circumstances here fail to support an easement by necessity. We affirm the judgment of the Court of Appeal.

FACTUAL AND PROCEDURAL BACKGROUND

The parties to this matter are plaintiff Cheryl C. Murphy, Trustee of the Murphy Children Education Trust dated June 11, 1998, and defendants Roger Burch and Michele Burch, Trustees of the RMB Revocable Family Trust dated February 5, 1999.

In their respective capacities as trustees, Murphy and the Burches are owners of certain adjoining real property in Mendocino County. The "Murphy property" consists of four parcels located east of the "Burch property," which consists of two parcels. The only public road that has ever existed in the vicinity of the Murphy and Burch properties is California State Highway 162 (Highway 162), which is located to the south and runs in a generally east-west direction without intersecting either property. The sole means of vehicle access between Highway 162 and the Murphy property is a private road (the Access Road) that extends north from the highway and crosses over the Burch property and other privately owned land before entering the four parcels of the Murphy property.

As relevant here, Murphy filed this action seeking to quiet title to an easement along the portion of the Access Road located on the Burch Property. The Burches also seek to quiet title and to permanently enjoin use of the Access Road by Murphy and any successors. The parties submitted this matter to a bench trial upon the following agreed statement of facts.

Prior to 1876, the federal government owned all of the properties at issue in this case. Over the course of time between 1876 and 1929, it deeded the parcels now making up the Burch property, by patent, to various private owners.[1] The federal government conveyed these parcels without expressly reserving an easement over the Access Road to Highway 162 for the benefit of the parcels it retained, including the adjoining parcels to the east.

On December 28, 1932, the federal government conveyed to John Bridges, also by patent, the four landlocked parcels now constituting the Murphy property. The conveyances to Bridges did not include any express grant of an easement over the Access Road to Highway 162 for the benefit of the conveyed property. In 1998, Murphy purchased these parcels from Bridges's successors in interest.

As indicated, the Access Road provides the only roadway access between the Murphy property and Highway 162. Consequently, without an easement over the Access Road across the Burch property, the Murphy property has no vehicular access to or from any public road. At the bench trial, the parties agreed that Murphy has no right to cross the Burch property by virtue of a prescriptive easement, but contested whether Murphy is entitled to an easement by necessity. The trial court resolved the matter in Murphy's favor, and entered judgment accordingly. The Burches appealed, and the Court of Appeal reversed.

DISCUSSION

The central issue is whether the federal patent conveyances to Murphy's predecessors in interest and to the Burches' predecessors in interest included an easement by necessity over the Burch property for the benefit of the Murphy property.

■ Generally, an easement by necessity arises from an implied grant or implied reservation in certain circumstances when a property owner (the grantor) conveys to another (the grantee) one out of two or more adjoining parcels of the grantor's property. When there is no express provision for

---

[1] As used herein, a patent refers to a government grant that confers on an individual fee simple title to public lands, or the official document of such a grant. (See *Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 800, fn. 1 [125 Cal.Rptr.2d 817] (*Kellogg*).)

access, and the parcel conveyed is either landlocked entirely by the parcels retained by the grantor, or landlocked partly by the grantor's retained land and partly by the land of others, the grantee may claim an implied *grant* of a right-of-way of necessity over the land retained by the grantor. (See generally 6 Miller & Starr, Cal. Real Estate (3d ed. 2006) § 15:27, p. 15-104 (6 Miller & Starr).) Conversely, when the grantor conveys adjoining property without an express agreement for access to a retained parcel left landlocked, the grantor may seek an implied *reservation* of a right-of-way of necessity over the conveyed property for the retained parcel's benefit. (6 Miller & Starr, *supra*, § 15:27, p. 15-107.) In both situations, the landlocked parcel benefitted by the implied right-of-way is called the dominant tenement or dominant estate, while the burdened property is referred to as the servient tenement or servient estate. Remote grantees in the chain of title may assert the easement long after its creation by the original common grantor, and despite the failure of a prior grantee to exercise the right. (*Lichty v. Sickels* (1983) 149 Cal.App.3d 696, 700–701 [197 Cal.Rptr. 137]; see *Kripp v. Curtis* (1886) 71 Cal. 62, 65 [11 P. 879] [an easement by necessity "pass[es] as appurtenant to the estate when sold"].)

■ Easements by necessity originated in the common law and are " 'the result of the application of the presumption that whenever a party conveys property, he conveys whatever is necessary for the beneficial use of that property and retains whatever is necessary for the beneficial use of land he still possesses.' " (*Daywalt v. Walker* (1963) 217 Cal.App.2d 669, 672–673 [31 Cal.Rptr. 899].) The rationale driving this presumption is that "the demands of our society prevent any man-made efforts to hold land in perpetual idleness as would result if it were cut off from all access by being completely surrounded by lands privately owned." (*Roemer v. Pappas* (1988) 203 Cal.App.3d 201, 205 [249 Cal.Rptr. 743].) Hence, easements by necessity are grounded in the public policy that property should not be rendered unfit for occupancy or successful cultivation because access to the property is lacking. (*Daywalt v. Walker, supra*, 217 Cal.App.2d at p. 672.)

■ In California, the easement arises by implication based on the inferred intent of the parties to the property conveyance, as determined from the terms of the relevant instrument and the circumstances surrounding the transaction. (*Daywalt v. Walker, supra*, 217 Cal.App.2d at p. 673; *County of Los Angeles v. Bartlett* (1962) 203 Cal.App.2d 523, 529 [21 Cal.Rptr. 776].) Two circumstances are indispensable to the implication and must be shown: (1) a strict necessity for the claimed right-of-way, as when the claimant's property is landlocked; and (2) the dominant and servient tenements were under common ownership at the time of the conveyance giving rise to the necessity. (*Reese v. Borghi* (1963) 216 Cal.App.2d 324, 332–333 [30 Cal.Rptr. 868] [and cases cited]; see *Kellogg, supra*, 102 Cal.App.4th at p. 803; *Daywalt v. Walker, supra*, 217 Cal.App.2d at p. 672.) The implication will not be made, however,

where it is shown to be contrary to the parties' intentions. (*Daywalt v. Walker, supra*, 217 Cal.App.2d at p. 674; *County of Los Angeles v. Bartlett, supra*, 203 Cal.App.2d at p. 529.)

■ To satisfy the strict-necessity requirement, the party claiming the easement must demonstrate it is strictly necessary for access to the alleged dominant tenement. (*Kripp v. Curtis, supra*, 71 Cal. at p. 65.) No easement will be implied where there is another possible means of access, even if that access is shown to be inconvenient, difficult, or costly. (See *ibid.*) Moreover, such an easement continues only as long as the need for it exists. (*Ibid.*; *Lichty v. Sickels, supra*, 149 Cal.App.3d at p. 699; see generally 28 Cal.Jur.3d (2004) Easements and Licenses, § 70, pp. 221–222.) Thus, if adequate alternative access becomes available, the easement terminates because it no longer serves to promote the underlying public policy considerations. (See generally Bruce & Ely, The Law of Easements and Licenses in Land (2008) Creation of Easements by Implication, § 4:12, p. 4-41.)

■ To meet the common-ownership requirement, the party seeking the easement must establish that the lands composing the alleged dominant and servient estates were once under common ownership and that a conveyance by the common owner gave rise to the necessity for a right-of-way. In the absence of common ownership, an easement by necessity will not be implied based solely on a showing of necessity. (*Daywalt v. Walker, supra*, 217 Cal.App.2d at p. 673, relying on *County of Los Angeles v. Bartlett, supra*, 203 Cal.App.2d at p. 529.)

■ Decisions stress the significance of strict necessity and common ownership as circumstances from which the intent of the parties may be inferred. As one case explained, " '[a]n implication of the grant of a way of necessity may arise from the transaction, but the necessity does not of itself create a right of way, though it may be evidence of the grantor's intention to convey one and raise an implication of a grant.' " (*County of Los Angeles v. Bartlett, supra*, 203 Cal.App.2d at p. 530.) Another decision similarly concluded: "The fact that there is no way to the land sold except over the remaining land of the grantor, or that the remaining land of the grantor is not accessible except over the land granted by him, is only a circumstance resorted to for the purpose of ascertaining the intention of the parties to the grant . . . or reservation of a way . . . ." (*United States v. Rindge* (S.D.Cal. 1913) 208 Fed. 611, 620.) As these authorities recognize, the common law doctrine does not exist to ensure a right of access to any and all landlocked property; rather, the doctrine is properly applied only when the circumstances establish that an access easement was intended at the time of the common owner's conveyance.

■ When federal or state land patents are at issue, strict necessity and common ownership remain requirements of an easement by necessity. In contrast to private party conveyances, however, conveyances involving a sovereign as the common owner typically do not give rise to implied *reservations* of easements or other property interests in conveyed land. (E.g., *Leo Sheep Co. v. United States* (1979) 440 U.S. 668, 679–681 [59 L.Ed.2d 677, 99 S.Ct. 1403] (*Leo Sheep*) [easement by necessity]; *Hash v. U.S.* (Fed.Cir. 2005) 403 F.3d 1308, 1313–1318 [fee interest in land underlying abandoned railroad easements]; *State v. Black Bros. et al.* (1927) 116 Tex. 615 [297 S.W. 213, 217–218] [way of necessity].)[2] Courts have come to this result based on various considerations.

■ First, all patents, particularly those of federal origin, play a significant role in establishing title to property: " 'A patent to land, issued by the United States under authority of law, is the highest evidence of title, something upon which the holder can rely for peace and security in his possession.' " (*Brown v. Northern Hills Regional Railroad Authority* (2007) 2007 SD 49 [732 N.W.2d 732, 739].) Mindful of this circumstance, a number of courts express reluctance to interfere with the certainty and predictability of land titles conferred by a sovereign without any express reservation of rights. (E.g., *Leo Sheep, supra,* 440 U.S. at pp. 687–688; *Brown v. Northern Hills Regional Railroad Authority, supra,* 732 N.W.2d at pp. 739–740; *Granite Beach v. Natural Resources* (2000) 103 Wn.App. 186 [11 P.3d 847, 854–855] (*Granite Beach Holdings*); *State v. Black Bros. et al., supra,* 297 S.W. at p. 218; *United States v. Rindge, supra,* 208 Fed. at p. 619 [dictum].)

Second, the federal government owned most of the land at one time. Observing that generations of federal patents have issued with no express reservation of rights, some courts warn that the common-ownership requirement would be meaningless unless stronger showings are required for implying an easement by necessity in cases tracing back to patents. (E.g., *State v. Black Bros. et al., supra,* 297 S.W. at p. 218; see also *Granite Beach Holdings, supra,* 11 P.3d at pp. 854–855.)

Finally, some courts recognize that strict necessity does not exist in the case of the sovereign as in the case of the private landowner, because the sovereign can exercise the power of eminent domain to obtain any and all reasonable rights-of-way. (E.g., *Leo Sheep, supra,* 440 U.S. at pp. 679–680; *State v. Black Bros. et al., supra,* 297 S.W. at pp. 218–219; see also *Moores v.*

---

[2] But several authorities have held, assumed, or recognized that conveyances by a sovereign may give rise to a sovereign's implied *grant* of an easement over the land it retains, for the benefit of the property it conveys. (E.g., *Kellogg, supra,* 102 Cal.App.4th 796; *Moores v. Walsh* (1995) 38 Cal.App.4th 1046 [45 Cal.Rptr.2d 389]; accord, *Kinscherff v. United States* (10th Cir. 1978) 586 F.2d 159.)

*Walsh, supra*, 38 Cal.App.4th 1046, 1049–1050, fn. 1, 1051 [assuming an easement by necessity could be found if traced to common ownership by the federal government, any such easement was extinguished when state grantee could exercise its power of eminent domain].)

The United States Supreme Court adverted to at least two of these considerations in *Leo Sheep, supra*, 440 U.S. 668. In that case, the federal government had made a land grant to a private party without expressly reserving a right-of-way for public access to a reservoir located on landlocked federal property. The government sought to establish an implied reservation in the land grant, but the high court rejected the claim: "Where a private landowner conveys to another individual a portion of his lands in a certain area and retains the rest, it is presumed at common law that the grantor has reserved an easement to pass over the granted property if such passage is necessary to reach the retained property. These rights-of-way are referred to as 'easements by necessity.' There are two problems with the Government's reliance on that notion in this case. First of all, whatever right of passage a private landowner might have, it is not at all clear that it would include the right to construct a road for public access to a recreational area. More importantly, the easement is not actually a matter of necessity in this case because the Government has the power of eminent domain." (*Leo Sheep, supra*, 440 U.S. at pp. 679–680, fns. omitted.)

The high court proceeded to explain that the "pertinent inquiry" was the intent of Congress when it granted the land in question pursuant to the Union Pacific Act of 1862.[3] (*Leo Sheep, supra*, 440 U.S. at p. 681.) After observing that the 1862 act specifically listed certain reservations to the grant but not one for access, the court declined to "find the tenuous relevance of the common-law doctrine of ways of necessity sufficient to overcome the inference prompted by the omission of any reference to the reserved right [of access] asserted by the Government." (*Ibid.*) As the court explained, "[i]t is possible that Congress gave the problem of access little thought; but it is at least as likely that the thought which was given focused on negotiation, reciprocity considerations, and the power of eminent domain as obvious devices for ameliorating disputes." (*Ibid.*, fn. omitted.) The high court held, both as a matter of common law doctrine and as a matter of construing congressional intent, that no reserved right-of-way existed: "We are unwilling to imply rights-of-way, with the substantial impact that such implication

---

[3] Because federal land patents are effected by means of enactments that constitute laws as well as contracts, the intent of Congress is a prominent consideration in their interpretation. (See generally 3 Sutherland Statutes and Statutory Construction (7th ed. 2008) Public Land Grants, § 64:7, p. 491.)

would have on property rights granted over 100 years ago, in the absence of a stronger case for their implication than the Government makes here." (*Id.* at p. 682.)

█ The foregoing authorities and the considerations they raise are persuasive. Therefore, although we need not and do not presently impose a categorical bar to all easement-by-necessity claims tracing common ownership to the federal government, we hold that the special considerations above must inform the determination whether such an easement arises by implication. This means that, consistent with existing California common law, an easement by necessity may arise by implication based on the inferred intent of the parties to the property conveyance, as determined from the terms of the relevant instrument and the circumstances surrounding the transaction. (*Daywalt v. Walker, supra,* 217 Cal.App.2d at p. 673; *County of Los Angeles v. Bartlett, supra,* 203 Cal.App.2d at p. 530.) Strict necessity and common ownership remain required showings (*Kellogg, supra,* 102 Cal.App.4th at p. 803; *Daywalt v. Walker, supra,* 217 Cal.App.2d at p. 672), but when a claimant traces common ownership back to the federal government and seeks to establish an implied reservation of an access right-of-way, the intent of Congress is paramount and the government's power of eminent domain also bears significance. (*Leo Sheep, supra,* 440 U.S. at pp. 679–682.) Given the unique historical and legal nature of land patents, extreme caution must be exercised in determining whether the circumstances surrounding a government land grant are sufficient to overcome the inference prompted by the omission of an express reference to a reserved right of access. (See *id.* at pp. 681–682.) In such cases, the easement claimant bears the burden of producing evidence on the issues regarding the government's intent to reserve an easement and the government's lack of power to condemn.

In this matter, the federal government once simultaneously owned all the parcels composing the claimed dominant estate (the Murphy property) and all the parcels of the claimed servient estate (the Burch property). By 1929, the government granted to private parties the last of the patents pertaining to the Burch property, and in 1932 it granted to John Bridges the patents pertaining to the Murphy property.

The parties agree that, without an easement over the Access Road across the Burch property, the Murphy property has no vehicular access to or from any public road. The parties dispute, however, which conveyance gave rise to the necessity for the easement, and whether there was common ownership of the claimed dominant and servient tenements at the time of the relevant conveyance. Murphy asserts the relevant conveyance occurred in 1929, when the federal government deeded the last of the parcels composing the Burch property while retaining ownership of the landlocked Murphy property. She

claims the conveyances in 1929 and earlier gave rise to an implied reservation of a right-of-way of necessity over the conveyed Burch property for the benefit of the retained Murphy property. Conversely, the Burches contend that common ownership cannot be established because the relevant conveyance occurred in 1932, when the federal government deeded the landlocked Murphy property to John Bridges but no longer owned the Burch property.

We agree that an easement by necessity cannot arise by implication from the 1932 conveyance because common ownership was lacking. But even assuming the relevant conveyance took place in 1929,[4] when the federal government was the common owner of the Murphy property and the Burch property, we agree with the Court of Appeal that the trial court judgment in Murphy's favor cannot stand.

The record on appeal discloses that neither the patents themselves, nor the circumstances surrounding their issuance, support an easement by necessity. The parties stipulated that "[t]he U.S. Government did not, when conveying out any parcel of the property along the Access Road between the Murphy property and Highway 162, expressly reserve an easement over the Access Road to Highway 162 for the benefit of the Murphy property or other surrounding properties being retained by the U.S. Government." Murphy offered no legislative history demonstrating that Congress intended to imply a reservation of an easement under the federal statutes authorizing the subject patents. (See Act of May 20, 1862, ch. 75, 12 Stat. 392; Act of Mar. 3, 1855, ch. 207, 10 Stat. 701; Act of Apr. 24, 1820, ch. 51, 3 Stat. 566; accord, *Granite Beach Holdings, supra*, 11 P.3d at p. 854.) Indeed, any implication of a reservation for access appears negated by the circumstance that two of the statutes expressly provided for limited rights of reversion in the government, but omitted reservation of any other interest. (Act of May 20, 1862, ch. 75, § 5, 12 Stat. 392 [purchaser's change of residence or abandonment of land]; Act of Apr. 24, 1820, ch. 51, §§ 3, 4, 3 Stat. 566 [purchaser's failure in payment].) Nor did Murphy show that the government lacked authority to condemn access if it deemed that doing so was necessary. (See *Granite Beach Holdings, supra*, 11 P.3d at p. 854.)

In addressing these deficiencies, Murphy relies on *Kellogg, supra*, 102 Cal.App.4th 796, in which the plaintiff owners of certain landlocked property traced common ownership back to the federal government and claimed an easement by necessity over the defendants' neighboring properties. Ruling in the plaintiffs' favor, *Kellogg* broadly stated that "the federal government may be the common owner of the properties whose conveyance gives rise to the

---

[4] Although the government issued earlier patents for certain parcels of the Burch property, neither side offers arguments independent of the last 1929 patent. Accordingly, our analysis of the 1929 patent will be determinative with regard to both of the Burch parcels at issue here.

strict necessity that justifies an easement by necessity," and that such a conclusion "is consistent with the public policy" to "promote the productive use of land." (*Kellogg*, at p. 799; see also *Moores v. Walsh, supra*, 38 Cal.App.4th at p. 1049, fn. 1.) Murphy's reliance on *Kellogg* is misplaced.

Unlike the situation here, *Kellogg, supra*, 102 Cal.App.4th 796, did not concern a claim of an implied *reservation*. Rather, the plaintiffs in *Kellogg* sought to establish that when the federal government made a grant of landlocked property, the government also impliedly *granted* a right of access for that property over the land it retained. (*Kellogg*, at p. 811.) Because exercise of the government's power of eminent domain could have had no effect on access to the conveyed landlocked property, it is hardly surprising that *Kellogg* made no attempt to distinguish the authorities holding that such power negates the element of strict necessity when an implied reservation claim is at issue. (E.g., *Leo Sheep, supra*, 440 U.S. 668; *Hash v. U.S., supra*, 403 F.3d 1308; *State v. Black Bros. et al., supra*, 297 S.W. 213; cf. *ante*, fn. 2.) As one treatise observes, where the government is identified as the common grantor, "an easement of necessity may be created *against* the government, but the government agency cannot establish an easement by necessity over land it has conveyed because its power of eminent domain removes the strict necessity required for the creation of an easement by necessity." (6 Miller & Starr, *supra*, § 15:27, p. 15-106, fns. omitted; see also *id.*, § 15:28, p. 15-109; cf. *Moores v. Walsh, supra*, 38 Cal.App.4th at p. 1051; *Kinscherff v. United States, supra*, 586 F.2d at pp. 159, 161 [plaintiffs who acquired landlocked land by federal patent entitled to a hearing to determine whether their patent included an implied easement to use an access road across federal land]; *State of Utah v. Andrus* (D. Utah 1979) 486 F.Supp. 995, 1002 & fn. 11.)

Moreover, Murphy's expansive reading of *Kellogg, supra*, 102 Cal.App.4th 796, would, in the words of the Court of Appeal below, "effectively mean that any and all federal patent grants of adjoining California parcels of land, some landlocked and some not, and no matter in which order deeded to private parties, *have always included* (and hereafter always will) an easement of necessity from the landlocked property across the nonlandlocked properties to the nearest public road." (Fn. omitted.) Neither the public policy generally favoring access to landlocked property, nor the easement decisions involving federal patents, call for such a far-reaching rule.

Next, Murphy acknowledges *Leo Sheep*'s holding that the easement claimed there "is not actually a matter of necessity in [that] case because the Government has the power of eminent domain." (*Leo Sheep, supra*, 440 U.S. at pp. 679–680.) She contends, however, this holding is unpersuasive here, because the easement she seeks does not implicate a public right-of-way.

Relying on *Con. Channel Co. v. C. P. R. R. Co.* (1876) 51 Cal. 269 and *City of Oakland v. Oakland Raiders* (1982) 32 Cal.3d 60 [183 Cal.Rptr. 673, 646 P.2d 835], Murphy asserts the government may properly condemn an easement only if such action is necessary to provide public access to an area that is open to the public, such as the public reservoir and recreational area at issue in *Leo Sheep*. We are not persuaded.

Those decisions merely establish that a valid public purpose will not be found, and therefore the power of eminent domain cannot be exercised, where the proposed condemnation would benefit only a private company or individual. (*Con. Channel Co. v. C. P. R. R. Co., supra*, 51 Cal. at pp. 271–273 [finding statute unconstitutional to the extent it authorized exercise of the right of eminent domain in behalf of a private mining company for its private use]; *City of Oakland v. Oakland Raiders, supra*, 32 Cal.3d at p. 72 [acquisition and operation of a football team franchise might be shown to serve a valid public purpose, and thus might support a city's effort to condemn the franchise].)

The issue here, however, is not whether the federal government could validly have condemned an easement over the Burch property for the benefit of a private owner or privately owned property. Because the federal government still owned the Murphy property when it conveyed the Burch property, the relevant consideration is whether the government had the power to condemn an easement along the Access Road to provide access to its own land. Murphy identifies no evidence or legal authority indicating the federal government lacked power to do so, and at least one California case, addressing the state power of eminent domain, suggests otherwise. (*Moores v. Walsh, supra*, 38 Cal.App.4th at p. 1051.)

Finally, Murphy contends her claim is supported by several decisions holding that the ability to condemn an access easement does not preclude the creation of a common law easement by necessity. (E.g., *Blum v. Weston* (1894) 102 Cal. 362, 369 [36 P. 778]; *Taylor v. Warnaky* (1880) 55 Cal. 350, 351; *Roemer v Pappas, supra*, 203 Cal.App.3d at p. 206; *Reese v. Borghi, supra*, 216 Cal.App.2d at pp. 329–330.) Those decisions are of questionable relevance, however, because they addressed a limited and purely *private* statutory right of condemnation that has since been repealed.[5] More importantly, extending their reasoning to this case would be at odds with the recognition that an easement is not a matter of necessity when the federal government has the power of eminent domain (*Leo Sheep, supra*, 440 U.S. at pp. 681–682) and that strict necessity may be extinguished when a sovereign owner fails to exercise its power (*Moores v. Walsh, supra*, 38 Cal.App.4th at p. 1051). Such

[5] (Code Civ. Proc., former § 1238, repealed by Stats. 1975, ch. 1275, § 1, p. 3409; Civ. Code, former § 1001, repealed by Stats. 1975, ch. 1240, § 1, p. 3156.)

extension would also impede the public policy favoring the certainty and predictability of the countless patents that have issued over the last 180 years. (See *Leo Sheep, supra*, 440 U.S. at pp. 687–688.)

█ In sum, we conclude, based on the parties' stipulated facts, that neither the patents in this case, nor the circumstances surrounding their issuance, support the implication that the federal government reserved a right of access over the Burch property in 1929 when it conveyed that property while retaining the landlocked Murphy property. Accordingly, Murphy's claim for an easement by necessity fails.

### DISPOSITION

█ While easements by necessity are grounded in the public policy that property should not be rendered idle due to lack of access, the need for access, by itself, does not entitle a landlocked property owner to burden a neighbor's land when the easement claim must be traced back to a federal patent. For all the reasons above, we affirm the judgment of the Court of Appeal.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Moreno, J., and Corrigan, J., concurred.