Filed 6/13/22  Baghdassarians v. SK Vision CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| AREG BAGHDASSARIANS,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SK VISION, LLC,<br><br>    Defendant and Respondent. | B310345<br><br>(Los Angeles County Super. Ct. No. 19GDCV01096) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis A. Kin, Judge.  Affirmed and remanded with directions.

YK Law and Vahe Khojayan for Plaintiff and Appellant.

Law Offices of Eugene S. Alkana, Eugene S. Alkana and Robert I. Alkana for Defendant and Respondent.

_____

Plaintiff and appellant Areg Baghdassarians as trustee for AEAB Trust appeals the judgment in favor of defendant and respondent SK Vision, LLC, following a bench trial on his complaint for an easement by necessity. Baghdassarians owns a vacant lot behind residential property owned by SK Vision, and argues the evidence established the elements for an easement by necessity as a matter of law. We conclude that, while Baghdassarians may have established a prima facie case for an easement, the trial court's implied finding that SK Vision defeated that prima facie case is supported by substantial evidence. We therefore affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

This appeal is presented as a property dispute, but the facts reveal that it is much more personal. Specifically, both properties had previously been owned by Baghdassarians – the residential property held his home and the vacant lot behind it was largely unused. The dispute arose when SK Vision demanded, and ultimately foreclosed on, a deed of trust on Baghdassarians's "personal residence located at 4343 Vista Place," unaware that Baghdassarians's address actually encompassed both parcels.

**1.** *SK Vision Obtains the Residential Property*

Greg Kurdoglanyan is the owner and managing member of SK Vision. Kurdoglanyan and Baghdassarians (and their companies) had been involved in a number of real estate projects.[1] The business relationship soured, and SK Vision

---

[1]    We refer to Baghdassarians and all his related entities collectively as Baghdassarians. We refer to Kurdoglanyan and SK Vision collectively as SK Vision (except when necessary to refer to Kurdoglanyan as an individual).

2

brought suit against Baghdassarians for the loss of its investments. On August 26, 2010, they settled their dispute for $2.6 million, pursuant to a written agreement. Under the agreement, Baghdassarians agreed to transfer certain unrelated properties to SK Vision, as well as $1,946,000, to be paid in $6,000 monthly installments. Baghdassarians agreed to provide SK Vision with two deeds of trust on a specified (unrelated) property to secure his obligations. The parties also agreed to execute a stipulation for entry of judgment in the amount of $2.6 million, to be held unfiled unless there was a default in the terms of the settlement agreement.

Eighteen months later, on February 24, 2012, counsel for SK Vision wrote Baghdassarians, documenting further agreements that had been negotiated privately between Baghdassarians and Kurdoglanyan. Baghdassarians signed the letter, agreeing to its terms. According to the letter, Baghdassarians "apparently acknowledged that [he was] in default in a number of respects in connection with the Settlement Agreement . . . ." Based on Baghdassarians's proposals, SK Vision was "amenable to holding off on the filing of the judgment provided certain conditions are met." The letter then itemized a number of conditions.

Among other terms, Baghdassarians agreed to sign a new deed of trust in favor of SK Vision to replace the original deeds of trust listed in the settlement agreement. The letter stated, "The Deed of Trust will be secured by your personal residence located at 4343 Vista Place, La Canada-Flintridge, California, which shall be security for the Settlement Agreement . . . ."

Baghdassarians, at this point, held record title to the property located at 4343 Vista Place. But what Baghdassarians

knew, and SK Vision did not, was that the property at that address consisted of two separate parcels – Baghdassarians's personal residential property in front, and the vacant lot behind.[2] In compliance with his understanding of the agreement, Baghdassarians gave SK Vision a deed of trust on the residential property, but not the vacant lot behind it. SK Vision recorded the deed of trust on May 21, 2012.

Some four years later, SK Vision foreclosed the deed of trust and obtained the residential property with a credit bid at the trustee's sale. SK Vision recorded its trustee's deed on April 19, 2016.

## 2.      *The Two Properties*

The residential property is situated on a public street, and consists of "the street level and flat livable area where the house and level backyard is situated." Baghdassarians testified that the "residence built on [the property] consumed the entire parcel." It contains the house, and a backyard with a swimming pool. It is "surrounded on three sides by a concrete wall. At the

---

[2]      The two lots have assessor's parcel numbers 5810-019-007 and 5810-019-009, respectively. According to the agreed statement provided on appeal, the 007 parcel contains the vacant lot and the 009 parcel is the residential property. This is mistaken. The assessor's map confirms that 007 is the residential property and 009 is the vacant lot. The agreed statement indicates that Baghdassarians's testimony was in accord with the assessor's map. The error is only in the agreed statement's description of the case, and, unfortunately, crept into the trial court's judgment, which provides that there is no easement over 009 (which is actually the vacant lot) in favor of 007 (the residential property). At oral argument, the parties agreed the judgment was mistaken in this regard. We will remand with directions for the trial court to correct it.

4

time of construction and thereafter, there was no access provided from the residence parcel to the vacant parcel. [Baghdassarians] built a fence separating the residence lot from the vacant lot." There is no gate or entryway in the fence allowing access.

The vacant lot has no direct access to the street. It "consists of a small downward slope behind the fenced area" of the residential property. "It is vacant land, and essentially unusable." It did, however, contain the equipment for the residence's swimming pool.

It is not disputed that, as a matter of legal title, the vacant lot is landlocked and has no direct access to any public road. It is also undisputed that the vacant lot is not *factually* landlocked, and can be reached by crossing over other undeveloped land, owned by a third party. Baghdassarians never contacted the third party who owned this land, to see if it would be amenable to an easement for the vacant lot.[3]

### 3. *Baghdassarians Uses His Ownership of the Vacant Lot to Interfere with SK Vision's Use of the Residential Property*

SK Vision's deed of trust on the residential property had been in a junior position; after SK Vision foreclosed, the property was still encumbered by two senior liens. In 2016, in order to prevent loss of the property to the senior lienholders, SK Vision filed for Chapter 11 bankruptcy.

Part of SK Vision's bankruptcy plan was to rent out the house for $5000 per month. Baghdassarians objected to the plan,

---

[3] There is no evidence that SK Vision did, either. Kurdoglanyan, at deposition, testified that he did not know who owned the adjacent empty parcel.

arguing that his property – the vacant lot – was necessary to SK Vision's reorganization.[4]

SK Vision installed new pool equipment on the residential property. It argued that, therefore, the residential property could "be rented and the tenant or anyone else never has to set foot on the portion owned by [Baghdassarians]." SK Vision also submitted a declaration to the bankruptcy court from a real estate agent, Albert Babayan. Babayan confirmed that 4343 Vista Place consisted of the two separate lots – the residential property and the vacant lot. He gave his professional opinion that "SK Vision [] can lease its property as a tenant would never have to physically enter [Baghdassarians's] lot."[5]

On December 27, 2018, the bankruptcy court approved SK Vision's plan.

According to Babayan (the real estate agent), he subsequently listed the residential property for sale. It was in escrow when Baghdassarians filed the current action to establish an easement. The buyers withdrew their offer.

---

[4] Baghdassarians's objection is not part of the record. The record does, however, contain a declaration of Kurdoglanyan submitting his "proof as to why Mr. Baghdassarian[s] in his Objection to the Amended Disclosure Statement are without merit and his portion is not necessary to SK Vision's reorganization."

[5] In the course of their bankruptcy submissions, Kurdoglanyan and Babayan declared that there was no direct access to the vacant lot from the street. Baghdassarians relied on these declarations at trial in this case.

## 4. *Proceedings in this Action*

On August 27, 2019, Baghdassarians filed a verified complaint to quiet title to an easement and for declaratory relief regarding the extent and parameters of the easement. SK Vision answered and filed a cross-complaint, which is largely not implicated by this appeal.[6]

On November 16, 2020, the court held a brief bench trial, where three witnesses (Baghdassarians, Kurdoglanyan and Babayan) testified, and over 30 documents were admitted into evidence. Neither party requested a statement of decision. The following day, the court announced its decision in favor of SK Vision, concluding that Baghdassarians was not entitled to an easement. Judgment was entered accordingly, on December 11, 2020. Baghdassarians filed a timely notice of appeal.

As there had been no court reporter present at the trial, the parties agreed to proceed on appeal by means of an agreed statement. The agreed statement summarized the testimony of the witnesses and attached all written exhibits.

## DISCUSSION

On appeal, Baghdassarians argues that the trial court erred in denying him an easement, in that he had established, without dispute, the two prerequisites for an easement on the

---

[6] SK Vision alleged that, in order to preserve its own property from foreclosure, it paid Baghdassarians's share of an encumbrance on both properties, and sought restitution in the form of an equitable lien. It also sought damages for the loss of value to its property, in the event Baghdassarians received an easement. SK Vision did not prevail on either cause of action, and did not file a separate notice of appeal to challenge this ruling. It did, however, obtain judgment on its cause of action for declaratory relief that there is no easement.

7

basis of legal necessity: (1) both parcels had been under common ownership; and (2) separating the common ownership landlocked his parcel. The trial court found that Baghdassarians was not entitled to an easement by necessity on these facts alone. We affirm.

1.     *Law of "Easement by Necessity"*

"Generally, an easement by necessity arises from an implied grant or implied reservation in certain circumstances when a property owner (the grantor) conveys to another (the grantee) one out of two or more adjoining parcels of the grantor's property. When there is no express provision for access, and the parcel conveyed is either landlocked entirely by the parcels retained by the grantor or landlocked partly by the grantor's retained land and partly by the land of others, the grantee may claim an implied grant of a right-of-way of necessity over the land retained by the grantor. [Citation.] Conversely, when the grantor conveys adjoining property without an express agreement for access to a retained parcel left landlocked, the grantor may seek an implied reservation of a right-of-way of necessity over the conveyed property for the retained parcel's benefit. [Citation.]" (*Murphy v. Burch* (2009) 46 Cal.4th 157, 162-163.)[7]

The issue, however, is ultimately one of intent. Necessity in the abstract does not itself create the easement, necessity may simply evidence the grantor's intention to convey one and raise the implication of a grant. (*Daywalt v. Walker* (1963) 217 Cal.App.2d 669, 673.) "In California, the easement arises by

[7]     The template the Supreme Court described in *Murphy v. Burch* is essentially the fact pattern presented in the instant appeal.

8

implication based on the inferred intent of the parties to the property conveyance, as determined from the terms of the relevant instrument and the circumstances surrounding the transaction." (*Murphy v. Burch, supra,* 46 Cal.4th at p. 163.) " ' "The implication of an easement by necessity is based upon the inferred intent of the parties, which is to be determined from the terms of the instrument and circumstances surrounding the transaction; the implication will not be made where it is shown that the parties did not intend it. . . . Necessity alone without any reference to any relations between the respective owners of the land is not sufficient to create this right." ' " (*Daywalt v. Walker, supra,* 217 Cal.App.2d at p. 673.)

A prima facie case of an easement by necessity arises when parcels were under common ownership and a conveyance was made which landlocked one of the parcels and created a strict necessity for access across the other. (*Hewitt v. Meaney* (1986) 181 Cal.App.3d 361, 366 [trial court finding of no easement affirmed on appeal when defendant's evidence of lack of intent was sufficient to overcome the presumption for an easement by necessity].) This is a presumption affecting the burden of proof. (*Id.* at p. 367.) Once the plaintiff establishes a prima facie case, the burden switches to the defendant to establish by a preponderance of the evidence that the common grantor did not, in fact, intend to reserve an easement. (*Ibid.*) This is a question of fact for the trial court. (*Roemer v. Pappas* (1988) 203 Cal.App.3d 201, 207.) The trial court's determination cannot be disturbed if there was substantial evidence to support it. (*Ibid.*)

## 2. *Doctrine of Implied Findings*

According to the agreed statement, the trial court ruled that Baghdassarians "was not entitled to an easement by necessity since he had not established strict necessity at the time of conveyance, but also based upon the fact that Plaintiff offered no description of any easement." Baghdassarians argues that the court erred because he established the prerequisites for an easement as a matter of law. Among other arguments, SK Vision responds that, even if Baghdassarians had established those elements, giving rise to the presumption, it successfully countered the presumption with sufficient evidence that no easement was actually intended. The first issue we must address is whether we can consider SK Vision's argument, as the agreed statement does not reflect an express trial court ruling on the issue of intent.

" ' "Under the doctrine of 'implied findings,' when parties waive a statement of decision expressly or by not requesting one in a timely manner, appellate courts reviewing the appealed judgment must presume the trial court made all factual findings necessary to support the [order] for which there is substantial evidence." ' [Citation.] ' "In other words, the necessary findings of ultimate facts will be implied and the only issue on appeal is whether the implied findings are supported by substantial evidence." ' [Citation.] The doctrine of implied findings 'is a natural and logical corollary to three fundamental principles of appellate review: (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.' [Citation.]" (*Abdelqader v. Abraham* (2022) 76 Cal.App.5th 186, 197.)

10

Here, although there was no statement of decision, the parties' agreed statement purports to document reasons given by the court when it announced its decision.  The parties have not identified, and independent research has not disclosed, caselaw addressing whether the doctrine of implied findings applies in a situation where there was no statement of decision, but the parties instead relied on an agreed statement.  There is, however, some authority addressing the question in the context of a settled statement.  (Compare *A.G. v. C.S.* (2016) 246 Cal.App.4th 1269, 1280-1283 (*A.G.*) [the doctrine of implied findings generally applies when there is a settled statement] with *In re Marriage of Fingert* (1990) 221 Cal.App.3d 1575, 1580 [doctrine does not apply when the settled statement contains the court's decision and the judge's statement of reasons for it].)

Before addressing that authority, it is important to identify the differences between agreed statements and settled statements.  An agreed statement is prepared by the parties and signed by them.  (Cal. Rules of Court, rule 8.134(a)(1).)  In contrast, a settled statement is "approved by the superior court." (Cal. Rules of Court, rule 8.137(a).)  The trial court reviews the settled statement proposed by the appellant, and any proposed amendments from the respondent, and may order corrections or modifications to it.  (Cal. Rules of Court, rule 8.137(f)(3).)  Here, the parties proceeded by means of an agreed statement, not a settled statement.  They stipulated to the language in the agreed statement, but court approval was not required or obtained.  In other words, the agreed statement provides this court with only the parties' agreed recollection of the trial court's orally stated reasons for its ruling, without giving the court an opportunity to confirm whether the statement was accurate or complete.

11

Moreover, California Rules of Court, rule 8.134(a)(1) provides that an agreed statement "must explain the nature of the action, the basis of the reviewing court's jurisdiction, *and how the superior court decided the points to be raised on appeal.*" (Emphasis added.) Here, SK Vision raised in its respondent's brief the issue of the parties' intent, and Baghdassarians briefed it in reply. Yet the parties failed to include in the agreed statement "how the superior court decided" this point.

The issue before us thus becomes whether the doctrine of implied findings applies when no statement of decision was requested and the parties chose to proceed by an agreed statement which fails to address all points raised on appeal, in violation of the applicable Rule of Court.

Although the *A.G.* court was concerned with a settled statement approved by the court, rather than an unapproved agreed statement, much of its analysis applies here. As the *A.G.* court explained, a "settled statement is a 'condensed narrative of the oral proceedings that the appellant believes are necessary for the appeal.' [Citation.] As a summarized narrative of what was *said*, a settled statement may not capture the judge's complete analysis of an issue of fact or law, even if the judge ruled from the bench." (*A.G.*, *supra*, 246 Cal.App.4th at p. 1282.) In contrast, a statement of decision "provides a complete record of the court's reasoning. It goes beyond memorializing only a condensed narrative of the oral proceedings. 'The purpose of the statement is to provide an explanation of the factual and legal basis for the court's decision.' [Citation.] A statement of decision gives the trial court 'an opportunity to place upon [the] record, in definite written form, its view of the facts and the law of the case, and *to*

12

*make the case easily reviewable on appeal by exhibiting the exact grounds upon which judgment rests.'* [Citation.]" (*Ibid.*)

"As a 'condensed narrative of the oral proceedings,' a settled statement does not guarantee the reviewing court has before it the factual and legal basis for the trial court's determination." (*A.G., supra,* 246 Cal.App.4th at p. 1283.) "There is no certification that what appears as the court's order is the court's complete factual and legal basis supporting its decision on each principal controverted issue for which a statement may have been requested and is before us on appeal. Given this omission and consequent uncertainty, we are not at liberty to ignore the doctrine of implied findings and reverse the trial court on factual and legal grounds it may have actually considered but not expressed in writing. We thus apply the doctrine of implied findings as we review the trial court's decision." (*Ibid.*)

We need not decide whether the doctrine of implied findings applies when there is a settled statement but no statement of decision. But the analysis of the *A.G.* court applies with great force in this case – where there is only an agreed statement which memorializes the parties' recollection of the court's expression of reasons on the few points the court chose to address, not having been requested to address all issues that would be raised on appeal.

For these reasons, we do not consider ourselves limited to the reasons for the trial court's ruling set forth in the agreed statement, and instead apply the doctrine of implied findings to uphold the court's judgment if there is substantial evidence for any findings of ultimate fact that would support it.

13

### 3. *Substantial Evidence Supports the Implied Finding That No Easement Was Intended*

Pursuant to the doctrine of implied findings, we can imply a trial court finding that an easement was not intended, if supported by substantial evidence. The issue presented by this appeal is: Assuming that Baghdassarians established a prima facie case for an easement by necessity, does substantial evidence support the trial court's implied finding that an easement was not intended and, therefore, not created?

Baghdassarians originally purchased the property in 2003. While it is not clear how much of the residence he constructed, he testified that "[s]ince 2005 the residence parcel has been fully developed as a residence, with a swimming pool, built in barbeque, surrounded on three sides by a concrete wall." Baghdassarians specifically testified that he built the fence separating the residential property from the vacant lot.

The evidence supports the conclusion that Baghdassarians always viewed the vacant lot as undevelopable land that served the only purpose of providing a convenient place to keep his pool equipment out of view. That he never intended to make any use of the parcel is demonstrated by the fact that he did not even create a means of access from the residential property to the vacant lot, and instead fenced off the residential property completely.[8] He has never submitted plans for developing the vacant parcel, and could not identify the scope of easement he sought. As the residence "consumed the entire" residential parcel, it can be inferred that any easement – whether a path for

---

[8] The record fails to explain how Baghdassarians accessed the vacant lot for any maintenance of the pool equipment. He may well have used the adjacent vacant property for access.

14

walking or road for driving – would require damaging the existing residential structures. A reasonable inference is that Baghdassarians chose to sacrifice the vacant lot in favor of complete development of the residential property.

There is certainly no express statement of intent to create an easement to benefit the vacant lot. As for inferred intent, the evidence supports a finding that, when Baghdassarians agreed to provide SK Vision with a deed of trust on his "personal residence located at 4343 Vista Place," it was the objective intent of the parties that the deed of trust covered both the residential property and the vacant lot appurtenant to it. The two parcels have a single address – 4343 Vista Place. Even if we focus only on the actions of Baghdassarians, when he gave SK Vision a deed of trust on the residential property, he understood the risk that a foreclosure would occur and sever the common ownership of the properties. He testified, however, that, he "never intended to retain any easement rights at the time he signed the Deed of Trust."[9]

---

[9] On appeal, Baghdassarians argues that this testimony is irrelevant, because the relevant moment at which we must consider the parties' intent is when the common ownership was severed at foreclosure, not four years earlier when the deed of trust was signed. The testimony, as set forth in the agreed statement, is ambiguous. It could mean, as Baghdassarians presumes, that at the time he signed the deed of trust, Baghdassarians did not intend to retain any easement rights, because at that point in time he still owned both parcels. In the alternative, it could mean that at the time he signed the deed of trust, Baghdassarians did not intend to retain easement rights should he lose the property in the future. On this limited record, the trial court could have adopted either interpretation.

Nor did he tell SK Vision that he intended to retain easement rights in the event of a foreclosure, which, of course, would have meant the claimed easement rights would impair the value of SK Vision's security interest. Baghdassarians was hoping to prevent entry of a $2.6 million judgment against him; he needed to provide SK Vision with sufficient security. This would have been impossible if it was understood by both parties that the value of residential property would have been lessened by Baghdassarians's easement for access to his retained, unused vacant lot.

We find a 19th century case, *San Joaquin Valley Bank v. Dodge* (1899) 125 Cal. 77 (*San Joaquin Valley Bank*), instructive even though it upheld an easement by necessity. There, Dodge owned land he mortgaged to Hewlett. A few years later, Dodge recorded a declaration of homestead on a portion of the land. When Hewlett later commenced an action to foreclose the mortgage, the court entered judgment for $15,000; that judgment was imposed as a lien on five parcels, numbered 1-5; parcel 5 was the homestead. The court directed the sale of the land in numerical order; if sufficient funds were raised from the sale of the first four properties, the homestead would not be sold. The four properties were sold, but the sale of parcel 4 rendered parcel 4 landlocked. Its owner (the successor of the buyer) sought an easement by necessity over the homestead. (*Id.* at pp. 79-80.) The court granted an easement, and the California Supreme Court affirmed.

In the course of its opinion, the high court explained, "For the benefit of defendants in the foreclosure proceedings the decree provided that the land should be sold in five different lots, and that if the first four lots could be sold for enough, then lot 5

16

should be saved as a home. If the purchaser of lot 4 could not use the same because of no way to reach it, and that fact had been announced at the sale, the homestead might have had to be sold under the decree. To apply the rule to the purchaser of lot 4, and against the very person who was benefited by its sale, seems to us to be just and in accordance with the authorities." (*San Joaquin Valley Bank, supra,* 125 Cal. 77 at p. 83.)

A similar rationale applies here, but the reversed position of Baghdassarians and SK Vision requires the opposite result. Baghdassarians provided the deed of trust as security for his obligations under the settlement agreement and to avoid entry of judgment. If SK Vision had known at the time of the deed of trust (and subsequent foreclosure sale) that Baghdassarians claimed an easement over the residential property, impairing the value of the security in favor of the very party who was trying to avoid entry of judgment, the transaction might have looked very different.[10] Baghdassarians did not inform SK Vision that he intended SK Vision's security would be so encumbered; it was for his benefit at that time to make SK Vision believe the security was valuable.

Baghdassarians's conduct following foreclosure confirms that he never intended to reserve an easement over the residential property. He did not request access over the residential property to gain access to the vacant lot. He did not contact third party property owners of adjacent vacant property

---

[10]    For example, if SK Vision had instead filed entry of judgment – which was its right – it could have recorded the abstract of judgment as a lien against all of Baghdassarians's properties including the vacant parcel. (Code Civ. Proc., § 697.310, subd. (a).)

17

to negotiate an alternative right of access.  Instead, he injected himself into SK Vision's bankruptcy, attempting to challenge SK Vision's reorganization, arguing that SK Vision could not rent out the residential property without his involvement, due to his retained ownership of the vacant lot.

Put simply, the evidence supports the trial court's implied finding that this was not the case of a common owner granting a portion of his property subject to an implied easement by necessity for the use of his retained property.  Instead, it was the case of a defaulting debtor attempting to weaponize property law for the purpose of reducing the value of real property the debtor lost by foreclosure to his creditor.  Thus, on largely uncontested facts, the trial court impliedly found there was no intent to create an easement by necessity, and substantial evidence supported that finding.

## *DISPOSITION*

The judgment is affirmed.  The matter is remanded for the trial court to enter an amended judgment, providing that, on SK Vision's cross-complaint's cause of action for declaratory relief, the court finds that SK Vision's property, known as parcel number 5810-019-007, is not subject to any easement by necessity in favor of Baghdassarians' property, parcel number 5810-019-007.

Baghdassarians shall pay SK Vision's costs on appeal.


RUBIN, P. J.

WE CONCUR:


MOOR, J.                                    KIM, J.


18