[No. F042675. Fifth Dist. Aug. 25, 2004.]

DOUGLAS LARSSON, as Trustee, etc., et al., Plaintiffs and Respondents,
v.
JIMMY L. GRABACH et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I. and III.

**COUNSEL**

Linn & Blate, and David A. Linn for Defendants and Appellants.

Law Office of Russell D. Cook and Russell D. Cook for Plaintiffs and
Respondents.

**OPINION**

**ARDAIZ, P. J.**—The Larsson Family Trust (LFT) owns a 160-acre parcel of
property (sometimes referred to herein as the Larsson property) in Madera
County. LFT brought this quiet title action seeking a court determination that
LFT held an easement (an unpaved road) across a neighboring 122-acre
parcel owned by appellants Jimmy and Deama Grabach. The unpaved road
across the Grabach property connects the Larsson property to a paved public
road known as Road 400. The trial court found that LFT held an easement by
necessity and an easement by implication in the unpaved road across the
Grabach property.

The Grabachs have appealed. They contend that: (1) there was insufficient
evidence to support the trial court's finding of the existence of an easement
by necessity, (2) there was insufficient evidence to support the trial court's
finding of the existence of an easement by implication, and (3) the trial court
erred in denying their motion for a new trial. As we shall explain, we agree
with the Grabachs' first contention only. The evidence was, however, suffi-
cient to support the trial court's finding of an easement by implication. We
will therefore affirm the judgment only insofar as it finds the existence of an
easement by implication, reverse the judgment only insofar as it finds the
existence of an easement by necessity, and remand the matter to the trial
court for that court to modify its judgment in accordance with the views
expressed herein.

 We publish the portions of our opinion pertaining to the sufficiency of
the evidence to support the trial court's finding of the creation of an easement
by implication. We do so because this case presents a set of facts significantly
different from those presented in other published California cases involving
the creation of an easement by implication under Civil Code section 1104.
Specifically, we hold that an easement by implication can be createdwhen an
owner of real property dies intestate and the property is then divided and

distributed to the intestate's heirs by court decree. As we shall explain, our holding is consistent with decisions of other jurisdictions, which have held that an easement by implication can be created when real property is transferred by court decree.

## FACTS

Appellants Jimmy and Deama Grabach purchased their 122-acre parcel of real property in Madera County in 1998. The western edge of the Grabach property borders on a paved public road known as Road 400. The Larsson property is located directly south of the eastern portion of the Grabach property. The unpaved road in question begins at the western edge of the Grabach property, where it intersects with the paved public road (Road 400). A gate separates Road 400 from the unpaved road. After the Grabachs purchased their parcel in 1998, Jimmy Grabach locked the gate, thereby preventing the members of the Larsson family from gaining access to the unpaved road. The unpaved road heads in a generally southeast direction across the Grabach property to the northern border of the Larsson property. There was another gate where the unpaved road crosses the southern boundary of the Grabach property and enters the northern portion of the Larsson property. Jimmy Grabach changed the lock on that gate as well.

The unpaved road continues in an east/southeast direction across the Larsson property. To the east of the Larsson property is a parcel known as the "Twid/Lucas" property. From the eastern border of the Larsson property, the unpaved road continues in an easterly direction across the Twid/Lucas property. At the eastern edge of the Twid/Lucas property, the unpaved road connects to a paved road which runs through a residential development known as Yosemite Lakes Park. To the east of Yosemite Lakes Park is another public road known as Highway 41. LFT did not contend that it held any easement in the portion of the unpaved road which extends eastward from the eastern boundary of the Larsson property and across the Twid/Lucas property.

Nelson Nathaniel Logan (also known as Nathaniel Logan) was a relative of the Larssons. At one time he owned all three of the parcels we have referred to above (i.e., the 122-acre Grabach property, the 160-acre Larsson property, and the Twid/Lucas property). When Nelson Nathaniel Logan died intestate, his property was distributed by probate court decree in December 1942 to his heirs. The parcel we have been calling the Larsson property went to Amanda Casaurang. Casaurang was an aunt of Doug Larsson, one of the current beneficiaries of the LFT. Doug Larsson's father, Albert Larsson, acquired the property in the early 1970's. Albert Larsson and his wife Bertha Larsson created the LFT and placed the property in trust in November of 1995 for the benefit of their three sons, Gary, Douglas, and Dennis Larsson.

The parcel we have been calling the Grabach property passed from Nelson Nathaniel Logan to John Franklin Logan. After various intermediate conveyances (sometimes called "mesne conveyances") not pertinent to this appeal, the Grabachs purchased the parcel. The escrow on the sale to the Grabachs closed on October 7, 1998. Prior to their purchase of the property, the Grabachs were aware of the existence of the unpaved road across the property. Jimmy Grabach visited the property and saw the unpaved road. He also saw the two gates, and the sign saying "Larsson" near the gate at the boundary between the two properties. Jimmy Grabach testified that it was apparent to him that vehicular traffic used the road. He also testified that he received an August 25, 1998 (i.e., preclosing) fax from a realtor (Sherry Reames) informing him about a conversation another realtor (Brad Ditton) had with one of the Larsson brothers. The fax stated in part, under the heading "Larson [*sic*] Property . . . ; Mr. Larson [*sic*] seemed very low key about the access commenting that he went that way because that was the way they had gone when his Grandfather owned the land."

We will present additional facts pertinent to this appeal in the course of our analyses below of the issues to which those additional facts pertain.

## I.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## II.

### THE TRIAL COURT'S FINDING OF THE
### EXISTENCE OF AN EASEMENT BY IMPLICATION
### IS SUPPORTED BY SUBSTANTIAL EVIDENCE

■ "An easement will be implied when, at the time of conveyance of the property, the following conditions exist: 1) the owner of the property conveys or transfers a portion of that property to another; 2) the owner's prior existing use of the property was of a nature that the parties must have intended or believed that the use would continue; meaning that the existing use must either have been known to the grantor and the grantee, or have been so obviously and apparently permanent that the parties should have known of

---

*See footnote, *ante*, page 1147.

the use; and 3) the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement." (*Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 141 [80 Cal.Rptr.2d 126].)[1] The strict necessity required for an easement by necessity is not required for an easement by implication. The test is whether the easement is reasonably necessary for the beneficial enjoyment of the property conveyed. (*Owsley v. Hamner* (1951) 36 Cal.2d 710, 718–719 [227 P.2d 263].) An implied easement is "based on the theory that whenever someone conveys property, he includes or intends to include in the conveyance whatever is necessary for its beneficial use and enjoyment and to retain whatever is necessary for the use and enjoyment of the land retained." (25 Am.Jur.2d (1996) Easements and Licenses, § 23, fns. omitted.) The elements of an easement by implication "have been codified in Civil Code section 1104." (*Tusher v. Gabrielsen, supra,* 68 Cal.App.4th at p. 141, fn. 12.) Civil Code section 1104 states: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed."

After Nelson Nathaniel Logan died intestate, his land was distributed to his heirs in the court decree of December 1942. The parcel we have been calling the Larsson property went to Amanda Casaurang. The parcels we have been calling the Grabach property and the Twid/Lucas property went to other heirs. The December 1942 court decree states that the four heirs (John Franklin Logan, Albertina Julien, Harrison A. Larsson, and Amanda Casaurang) "for the purpose of effecting a partition of their interests in this matter have all executed and caused to be delivered to each other a certain instrument in writing under the provisions of which they have divided the estate property among themselves . . . ." The decree further states that the court was distributing the estate of the decedent "pursuant to" that written agreement of the heirs. The entire unpaved road crossing what we have been calling the

---

[1] An easement is "a charge or burden on one estate, the servient, for the benefit of another, the dominant." (25 Am.Jur.2d, Easements and Licenses, § 1, fn. omitted.) "Although a person cannot have an easement on his or her own property, an owner may use one portion of land for the use and benefit of another portion. . . . In such cases . . . the portion of the parcel that is being used is called the 'quasi-servient tenement,' and the portion or parcel benefited by the use is called the 'quasi-dominant tenement.' " (Miller & Starr, Cal. Real Estate (3d ed. 2000), Easements, § 15:20, fns. omitted.) Thus the unpaved road across the Grabach property is the servient tenement. The Larsson property is the dominant tenement. Back when Nelson Nathaniel Logan was living and owned both parcels, the portion of the unpaved road in issue in this case was the quasi-servient tenement whenever he used it to travel to the portion of his property (the quasi-dominant tenement) that is now the Larsson property.

Grabach, Larsson and Twid/Lucas properties existed at the time of the December 1942 distribution. This was established through the testimony of Lewis W. "Bud" Shannon, who was born in 1918 and was raised near Road 400 "about a mile above" the Larsson property. Shannon testified that Nelson Nathaniel Logan was a "[g]ood friend of ours." He testified that the unpaved road in question, which runs generally east/southeast, "was the only access they had back in the 20's" to Road 400 from homesteads that were located in the area now known as Yosemite Lakes. It is thus apparent that unless the heirs of Nelson Nathaniel Logan, and the probate court, intended for Amanda Casaurang to have a parcel (the 160-acre Larsson property) with no access to a public road (Road 400), they must have intended for her to use the unpaved road to reach her property from Road 400, and across the parcel we are calling the Grabach property.

■ The fact that there may not yet have been a cabin on the Larsson property in 1942 does not matter. Shannon testified that Nelson Nathaniel Logan's cabin was near Road 400. Thus that particular cabin was apparently located on the property now owned by the Grabachs. He did not have to have another cabin on what is now the Larsson property in order for Amanda Casaurang to have an easement across what is now the Grabach property to reach the cabin she built in approximately 1943 on what is now the Larsson property. " 'The extent of an easement created by implication is to be inferred from the circumstances which exist at the time of the conveyance and give rise to the implication. Among these circumstances is the use which is being made of the dominant tenement at that time. Yet it does not follow that the use authorized is to be limited to such use as was required by the dominant tenement at that time. It is to be measured rather by such uses as the parties might reasonably have expected from the future uses of the dominant tenement. What the parties might reasonably have expected is to be ascertained from the circumstances existing at the time of the conveyance. It is to be assumed that they anticipated such uses as might reasonably be required by a normal development of the dominant tenement.' " (*Fristoe v. Drapeau* (1950) 35 Cal.2d 5, 9 [215 P.2d 729], quoting from Rest., Property, Servitudes (1944) § 484, com. b, p. 3022).) If Nelson Nathaniel Logan's cabin was not located on the parcel Amanda Casaurang received in the intestate distribution of Logan's property, the heirs and the probate court could reasonably have expected that she might build one, and that she would use the unpaved road from Road 400 to reach her cabin and her property.

■ Appellants Grabach appear to argue that there is no substantial evidence to support the creation of an easement by implication because there is no evidence that Nelson Nathaniel Logan intended to create any easement. But Nelson Nathaniel Logan never actually conveyed any property to his heirs. He simply died, and the laws of intestacy determined who would inherit his property. Civil Code section 1104 does not contain any absolute

requirement that there be a living grantor. Nor does it contain any express requirement that the intent of a real property owner whose property transfers ownership upon his or her death must have been expressed in a duly executed will, even though a transfer by will can create an easement by implication. (See *Cheda v. Bodkin* (1916) 173 Cal. 7 [158 P. 1025].) The statute simply requires a "transfer of real property." (Civ. Code, § 1104.) Appellants Grabach argue that "there are no cases in California, on point, involving creation of an implied easement in an intestate probate." But there are cases in other jurisdictions. ■ "A right of way, upon a severance of the estate by partition between heirs, sometimes arises when it would not exist in case of a conveyance of one portion of the premises; and it may be laid down as a general rule that a partition of real estate among heirs carries with it, by implication, the same right of way from one part to and over the other as had been plainly and obviously enjoyed by the common ancestor, in so far as it is reasonably necessary for the enjoyment of each part." (*Ellis v. Basset* (1891) 128 Ind. 118 [27 N.E. 344, 345]; in accord, see also *Jones v. Bethel* (1925) 20 OhioApp. 442 [152 N.E. 734, 735].) And the authors in Bruce & Ely, The Law of Easements and Licenses in Land, state at section 4:21, footnotes omitted: "Severance may be involuntary, as when land is divided by mortgage foreclosure, tax sale, or judicial partition. It has been argued that involuntary severance cannot form the basis of an implied easement because such a servitude is predicated on the intent of the parties and the involuntary grantor has no intent to convey, much less an intent to create an easement as part of the conveyance. This argument is unpersuasive. Implied easements are not based on the grantor's actual subjective intent, but rather on the parties' presumed objective intent as determined from the surrounding circumstances." See also *Deisenroth v. Dodge* (1956) 7 Ill.2d 340, 346 [131 N.E.2d 17], where the court stated: "This doctrine of implied easements is not limited to cases of direct conveyance by deed of the common owner, but applies to severance of unity of title by judicial proceedings of any character, including judgment in partition proceedings, if all other essentials are present." (In accord, see also 25 Am.Jur.2d Easements and Licenses, § 30.)

### III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1147.

## DISPOSITION

The judgment insofar as it finds the existence of an easement by necessity is reversed for reasons stated. The judgment insofar as it finds the existence of an easement by implication is affirmed. The superior court is directed to modify its judgment in accordance with the views expressed in this opinion. Costs to respondent.

Harris, J., and Levy, J., concurred.

A petition for a rehearing was denied September 13, 2004, and appellants' petition for review by the Supreme Court was denied December 15, 2004. Baxter, J., did not participate therein.