Filed 8/25/15  Bayasi v. Cerullo CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| MOHAMAD ZIAD BAYASI, as Trustee, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> MORRIS CERULLO, as Co-trustee, etc. et al., <br><br> Defendants and Respondents. | D065970 <br><br><br> (Super. Ct. No. 37-2011-00088572-CU-OR-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Judith F. Hayes, Judge.  Reversed and remanded with directions.

Ogletree, Deakins, Nash, Smoak & Stewart and Christopher Wayne Olmsted for Plaintiff and Appellant.

Galuppo & Blake and Louis A. Galuppo, Steven W. Blake, Andrew E. Hall, Daniel T. Watts, for Defendants and Respondents.

Plaintiff and appellant Mohamad Ziad Bayasi, as trustee of the Bayasi Family Trust (Bayasi) appeals from a summary judgment entered in favor of defendants and

respondents Morris Cerullo, Roger Artz, and Lynn Hodge, as co-trustees of the Plaza Del Sol Real Estate Trust, on Bayasi's operative complaint seeking easements by necessity, implication, and prescription over land owned by the trust. Bayasi contends the trial court disregarded evidence raising triable issues of fact on his claims of easement and erred by granting summary judgment. We conclude defendants met their burden to show Bayasi cannot establish his claim for an easement by necessity. However, we hold summary judgment was not proper as to Bayasi's claims for easements by implication and prescription, on which defendants either did not establish they are entitled to summary judgment or Bayasi presented evidence raising triable issues of material fact for a jury. We therefore reverse the judgment and remand with directions set forth below.

FACTUAL AND PROCEDURAL BACKGROUND

In stating the facts, we consider all of the evidence reflected in the parties' summary judgment papers, viewing it and drawing inferences that may properly be drawn in Bayasi's favor. (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768; *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843; *Stockton Mortgage, Inc. v. Tope* (2014) 233 Cal.App.4th 437, 446.)

In October 1986, Atlas Hotels, Inc. (Atlas) owned five parcels of property located in Mission Valley, roughly in the Southwest quadrant of the intersection of Interstate 8 and Interstate 163. Two of the parcels (the "Plaza Del Sol" or PDS parcels) are adjoining, and three parcels are the Bayasi parcels, the northern border of which abuts the PDS parcels.

2

The three Bayasi parcels[1] encompass a hillside that is surrounded by the University of California San Diego Medical Center (UCSD) at the top of the mesa, and various hotel properties that are accessed by a public street, Hotel Circle South. A recorded 1904 subdivision map shows that three streets (Dove, Eagle, and Falcon Streets, collectively the "paper streets") provide access to the Bayasi parcels via Dove Canyon, a steep canyon with sharp cliffs that has been dedicated as an environmentally protected Multiple Habitat Protection Area (MHPA). Those streets, however, have not been developed to the point that they reach the Bayasi parcels; their development within Dove Canyon ends from a 1,100-to-2000 foot distance from the Bayasi parcels. As of August 1987, the parcels within Dove Canyon were dedicated by the San Diego City Council as an open space park.

Atlas developed the PDS parcels with the Mission Valley Resort, which included a hotel, restaurant, convenience store and a gym/health club. In developing the resort, Atlas determined that parking was insufficient to meet its needs, particularly for the gym, so it corrected the problem by extending the paved parking lot next to the gym onto parcel No. 3. Atlas used that extended parking lot for customers of the gym and other businesses operating on the PDS parcels. In the 1980's Atlas also designed, but never built, an office building that it contemplated putting at the top of the Bayasi parcels. The development plans included a pedestrian access pathway that extended from the office

---

[1] The Bayasi parcels are assessor's parcel Nos. 444-103-01 (parcel No. 1), 444-103-02 (parcel No. 2) and 444-060-03 (parcel No. 3).

structures to the gym area, for the purpose of selling gym memberships to the office tenants.

In 1992, Atlas sold the PDS parcels to another purchaser but retained title to the Bayasi parcels. Atlas then sold the Bayasi parcels to Samantha Mills. Within six months of purchasing the Bayasi parcels, Mills sold them to Bayasi. The joint broker in that transaction told Bayasi before the purchase that the parcels had "access issues" and explained that Bayasi may need to obtain an easement from one of his neighbors to obtain access to them. Bayasi personally walked the property and reviewed the recorded maps at the county recorder's office. Bayasi eventually transferred his parcels to the Bayasi Family Trust.

Bayasi parcel Nos. 1 and 2 contain three small buildings on the top of the hill near UCSD that have been unoccupied since 2006. Bayasi originally accessed those buildings through UCSD's property on or around an easement that had been recorded in 1954 (the 1954 easement). In 2006, access through UCSD was fenced off. After 2006, Bayasi continued to use UCSD to access his property, breaking the fence until UCSD reinforced it, which prevented him from travelling through to his property. Bayasi unsuccessfully sought to quiet title to the 1954 easement (*Bayasi v. Regents of University of California* (Aug. 14, 2008, D050562 [nonpub. opn.])), and as of early 2007, that easement was

extinguished.[2]

Between 1992 and 2011, ownership of the PDS parcels changed hands a number of times. In 2011, defendants purchased them in a receivership sale, and shortly afterwards issued Bayasi a written notice affirming that they had granted him permission to use the PDS parcels to temporarily access the Bayasi parcels.

In July 2012, Bayasi filed a verified first amended complaint for quiet title against defendants, alleging in part that from approximately 1955 through the early 1990's, prior owners of their property had used the PDS parcels as a means of ingress and egress to the Bayasi parcels from Hotel Circle South. He alleged that when Atlas transferred the PDS parcels to a subsequent owner but retained ownership of the Bayasi parcels, the Bayasi parcels became landlocked. Bayasi alleged that when the 1954 easement was extinguished, conditions had changed establishing his right to an easement by necessity.

_____

[2] As to this lawsuit, Bayasi explains in his opposing summary judgment declaration that he had provided a sworn declaration regarding his opinion, at the time, about whether he believed a street or road could be constructed from the bottom of his parcels to reach the residential structures at the top of the parcels. He points out that the main focus of that case was access to the residential structures, and he affirms his prior statements that the structures are over 120 feet higher in elevation from the properties to the west; from the westerly edge of the Bayasi property the terrain slopes upward at a grade greater than two to one; there is no vehicular access to the structures from the properties to the west or from Hotel Circle South; and there is no evidence that access to the structures has ever been obtained from the west or Hotel Circle South. Bayasi explained that notwithstanding those statements, he had personally accessed the structures by walking up the hill, and that provisional stairs were built from the bottom of the parcel to reach them. He acknowledged he had previously said that "Hotel Circle South will never be a viable method of access to the Bayasi property as a result of severe topographical constraints and environmental impact," but sought to explain that statement by saying he had "revised [his] belief" based on a reexamination of the terrain, and now believed that access could be developed from the bottom to the top of his parcels "via a properly engineered roadway."

5

He further alleged that his use of the PDS parcels, as well as the use by Atlas and later owners, to access the Bayasi parcels was reasonably necessary for the use and benefit of the Bayasi parcels, and he sought an easement by implication over the PDS parcels in the same manner and to the same extent as Atlas. Finally, Bayasi alleged that his use of the strip of land across the driveway and parking lot of the PDS parcels has been actual, open and notorious; continuous and uninterrupted; hostile and adverse to defendants' rights; and for a period of excess of five years as to warrant an easement by prescription.

Defendants moved for summary judgment or alternatively summary adjudication of issues. They argued Bayasi could not prevail on his claims of easement by necessity or implication because at the time Atlas separated his parcels from the PDS parcels, Bayasi's parcels had multiple legal means of access via the paper streets, there was no history of Atlas's use of the PDS parcels to access Bayasi's parcels, and there was no intent by Atlas to reserve any right of access in favor of Bayasi's parcels when it divided his parcels from the PDS parcels. They showed that though there is a process to request permission to develop mapped streets encumbered by environmental protections, Bayasi had not applied for such permission, nor had he prosecuted any litigation against the City of San Diego to assert his right to develop those streets. They further argued Bayasi could not prevail on his claim for a prescriptive easement because his use of access for construction was interrupted by a criminal citation issued by the City of San Diego, and his alleged uses did not fulfill the elements of an easement by prescription.

In opposition, Bayasi argued defendants did not meet their burden of production or persuasion to negate the elements of his claims in its motion, and he possessed evidence

6

raising triable issues of fact. Specifically, as for his claim of easement by necessity, he argued defendants did not defeat the element of "strict necessity" because from an engineering standpoint, development of the paper streets was impossible, but even if not, development would be prohibited given the City of San Diego's designation of the area as an open space park and MHPA. Bayasi presented the declaration and reports of professional civil engineer Roberto Martinez, who concluded that given the MHPA and open space designations, as well as the grading, excavation, and size of retaining walls needed to develop the streets, it was impossible to develop the paper streets and that the Bayasi parcels were rendered landlocked as a result. Bayasi further argued defendants did not negate the element of open, apparent and continuous use for his claim of easement by implication because the evidence showed that after 1975, the patrons of Atlas and later owners openly and continuously traveled over the PDS parcels to the parking lot on Bayasi's property. Finally, Bayasi argued his evidence showed he was entitled to a prescriptive easement as he had continuously accessed the Bayasi parcels via the PDS parcels for more than the statutory five-year period for various work and development on his property; his temporary ceasing of grading did not stop the continuity of his use; and his use was open, notorious and continuously visible.

The trial court tentatively denied defendants' motion. Following argument on the matter, the court granted the motion, ruling defendants had sustained their burden to show Bayasi could not establish certain elements of his claims. In particular, it ruled defendants presented evidence the former owners had no intent to landlock the Bayasi parcels and that the Bayasi parcels were not in fact landlocked due to the paper streets;

7

Bayasi did not engage in open, notorious, continuous and hostile possession for the full statutory period; and Bayasi had admitted he did not tell anyone he was accessing the PDS parcels for fear of initiating lawsuit, demonstrating his possession was not open and clearly visible. It ruled Bayasi failed to sustain his burden to show triable issues of fact on these points.

Bayasi appeals from the ensuing judgment.

DISCUSSION

I. *Standard of Review*

" 'A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.' " (*Conroy v. Regents of University of Cal.* (2009) 45 Cal.4th 1244, 1250.) "A defendant meets his or her burden upon a motion for summary judgment or summary adjudication if that party has proved 'one or more elements of the cause of action . . . cannot be established . . . .' [Citation.] The defendant need not conclusively negate an element of the plaintiff's cause of action, but must only show that one or more of its elements cannot be established. [Citation.] To shift the burden to the nonmoving party, the evidence produced by the moving party must 'persuade the court that there is no material fact for a reasonable trier of fact to find . . . .' [Citation.] The moving party also bears a burden of production 'to make a prima facie showing of the nonexistence of any triable issue of material fact.' [Citation.] 'A prima facie showing is one that is sufficient to support the position of the party in question.' [¶] 'Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts

8

exists . . . .' [Citation.] . . . 'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.' " (*DiCola v. White Brothers Performance Products, Inc.* (2008) 158 Cal.App.4th 666, 674.)

" ' "We review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.' " [Citation.] We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Conroy v. Regents of University of Cal.*, *supra*, 45 Cal.4th at pp. 1249-1250; see also *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003.)

## II. *Easement by Necessity*

"Generally, an easement by necessity arises from an implied grant . . . when a property owner (the grantor) conveys to another (the grantee) one out of two or more adjoining parcels of the grantor's property. When there is no express provision for access, and the parcel conveyed is either landlocked entirely by the parcels retained by the grantor, or landlocked partly by the grantor's retained land and partly by the land of others, the grantee may claim an implied *grant* of a right-of-way of necessity over the land retained by the grantor. [Citation.] . . . [T]he landlocked parcel benefitted by the implied right-of-way is called the dominant tenement or dominant estate, while the burdened property is referred to as the servient tenement or servient estate. Remote grantees in the chain of title may assert the easement long after its creation by the original

9

common grantor, and despite the failure of a prior grantee to exercise the right."  (*Murphy v. Burch* (2009) 46 Cal.4th 157, 162-163.)

" 'An easement by way of necessity arises by operation of law when it is established that (1) there is a strict necessity for the right-of-way, as when the claimant's property is landlocked and (2) the dominant and servient tenements were under the same ownership at the time of the conveyance giving rise to the necessity.' "  (*Kellogg v. Garcia* (2002) 102 Cal.App.4th 796, 803; see also *Murphy v. Burch*, *supra*, 46 Cal.4th at p. 163.)  "[T]he common law doctrine does not exist to ensure a right of access to any and all landlocked property; rather, the doctrine is properly applied only when the circumstances establish that an access easement was intended at the time of the common owner's conveyance."  (*Murphy*, at p. 164.)

Under the strict necessity requirement, "the party claiming the easement must demonstrate it is strictly necessary for access to the alleged dominant tenement. [Citation.]  No easement will be implied where there is another possible means of access, even if that access is shown to be inconvenient, difficult, or costly."  (*Murphy v. Burch*, *supra*, 46 Cal.4th at p. 164, citing *Kripp v. Curtis* (1886) 71 Cal. 62.)  In *Kripp v. Curtis*, the court explained:  "The right of way from necessity must be in fact what the term naturally imports, and cannot exist except in cases of strict necessity.  It will not exist where a man can get to his property through his own land.  That the way over his own land is too steep or too narrow, or that other and like difficulties exist, does not alter the case, and it is only where there is no way through his own land that a grantee can claim a

10

right over that of his grantor. It must also appear that the grantee has no other way."

(*Kripp v. Curtis*, at p. 65; see also *Daywalt v. Walker* (1963) 217 Cal.App.2d 669, 901.)

Bayasi contends the existence of paper streets that cannot be built do not negate strict necessity as a matter of law; that courts should consider actual, not fictitious access, and he presented evidence that development of those streets is impossible, rendering his property landlocked. He asks us to rely on *Clay v. City of Los Angeles* (1972) 21 Cal.App.3d 577, involving an order sustaining a demurrer to an inverse condemnation complaint against a city (*id.* at p. 580), which Bayasi unpersuasively argues supports his argument.[3] Defendants respond that Bayasi's property is not landlocked in view of the paper streets, and further, when Atlas conveyed the PDS parcels in 1992, it had no intent to reserve an easement over the PDS parcels for the Bayasi parcels' benefit because access to the Bayasi parcels existed through the 1954 easement.

We need not decide whether the existence of paper streets, no matter their development potential, precludes a claim of easement by necessity as a matter of law.

---

[3] In *Clay v. City of Los Angeles*, a street maintained by the city for over 40 years was washed out by a rainstorm, completely cutting off access to plaintiffs' residence, and the city refused to either restore the street or vacate the street and give plaintiffs compensation. (*Clay v. City of Los Angeles*, *supra*, 21 Cal.App.3d at pp. 580-581.) The appellate court reversed the trial court's order sustaining the city's demurrer, holding that where "a city accepts a dedication and proceeds to *open, establish* and *maintain* a street, persons purchasing and constructing homes on lots abutting that street reasonably expect that the street will continue to exist in a usable condition." (*Id.* at p. 584, fn. omitted.) *Clay* was expressly limited to the precise factual situation before it; the court stated it did "not purport to deal with so-called 'paper' streets where dedicated streets are described on a tract map but have not been opened or developed." (*Id.* at p. 584, fn. 1.) Given the limitations in *Clay*'s holding, particularly the fact it does not address the question of an easement by strict necessity, we see no relevance to the issues involving the paper streets in this case.

11

Bayasi cannot establish a claim of an easement by necessity for another reason, that is, the facts cannot establish that at the time of Atlas's conveyance of the PDS parcels in 1992, there was any intent to provide an access easement via the PDS parcels in that necessity did not arise given the alternate access via the 1954 easement. (*Murphy v. Burch*, *supra*, 46 Cal.4th at p. 164.) In support of their summary judgment motion, defendants presented the declaration of Atlas's president, C. Terry Brown. In part, Brown averred: "Throughout the entire time that Atlas owned the Bayasi Parcels, Atlas did not use the PDS Parcels as a means to access or improve the Bayasi parcels. Furthermore, . . . the residential tenant that occupied the structures located at the top of the hill on the Bayasi Parcels exclusively used the adjoining UCSD Medical Center driveway as her means of ingress and egress for a period extending well after 1992 when Atlas divided the PDS Parcels from the Bayasi Parcels." He averred that "[a]t the time that Atlas conveyed the PDS parcels . . . in September of 1992, it was not using, had never used, and did not have plans to use the PDS parcels as a means of ingress or egress to the Bayasi Parcels. To the contrary, the only existing use of the Bayasi Parcels was as a parking lot to serve the businesses operating on the PDS Parcels."

On appeal, Bayasi maintains this declaration is insufficient and contradicted by evidence that when the parcels were commonly owned, Atlas traversed the PDS parcels to access parcel No. 3 for overflow parking and other activities. He points out Atlas had plans to develop an office building with pedestrian access contemplated from the PDS parcels. He claims, without citation to the record, that Brown admitted he did not think one could landlock another person, demonstrating Atlas possessed no intent to do so.

12

Absent reference to the record, we disregard these arguments, and decline to scour the record to find support for Bayasi's assertions. (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545-546 ["We are not required to search the record to ascertain whether it contains support for [the plaintiffs'] contentions. . . . [¶] Because it is not this court's function to serve as [plaintiff's] backup appellate counsel . . . the . . . contentions are waived"].)

In any event, the fact Atlas at some unidentified time contemplated a pedestrian access route to the top of the Bayasi parcels via the PDS parcels does not reflect its intent to grant an access easement *at the time of the 1992 division of the Bayasi and PDS parcels*. The presence of the former access easement from UCSD at the top of the Bayasi parcels at the time Atlas separated the parcels negates any claim of strict necessity for an easement via the PDS parcels. We conclude the trial court properly granted summary adjudication as to that cause of action.

### III. *Easement by Implication*

"An implied reservation of an easement may be inferred 'where there is an obvious ongoing use that is reasonably necessary to the enjoyment of the land granted.' [Citation.] 'Section 1104 of the Civil Code provides: "A transfer of real property passes all easements attached thereto, and creates in favor thereof an easement to use other real property of the person whose estate is transferred in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred, for the benefit thereof, at the time when the transfer was agreed upon or completed." ' [Citation.] An 'additional element usually required at common law for the

13

creation of an easement by implication' is 'that the easement should be reasonably necessary for the enjoyment of the property conveyed.' [Citations.] [¶] Thus, an 'easement will be implied when, at the time of conveyance of property, the following conditions exist: 1) the owner of property conveys or transfers a portion of that property to another; 2) the owner's prior existing use of the property was of a nature that the parties must have intended or believed that the use would continue; meaning that the existing use must either have been known to the grantor and the grantee, or have been so obviously and apparently permanent that the parties should have known of the use; and 3) the easement is reasonably necessary to the use and benefit of the quasi-dominant tenement. [Citation.] "The purpose of the doctrine of implied easements is to give effect to the actual intent of the parties as shown by all the facts and circumstances." [Citation.] An easement by implication will not be found absent clear evidence that it was intended by the parties.' " (*Thorstrom v. Thorstrom* (2011) 196 Cal.App.4th 1406, 1419-1420; see also *Tusher v. Gabrielsen* (1998) 68 Cal.App.4th 131, 141-142.)

" ' "The law does not favor the implication of easements. Such implication can only be made in connection with a conveyance, and in view of the rule that a conveyance is to be construed against the grantor, the court will imply an easement in favor of the grantee more easily than it will imply an easement in favor of a grantor. Whether an easement arises by implication on a conveyance of real estate depends on the intent of the parties, which must clearly appear in order to sustain an easement by implication. In order to determine the intent, the court will take into consideration the circumstances

14

attending the transaction, the particular situation of the parties, and the state of the thing granted." ' " (*Thorstrom v. Thorstrom*, *supra*, 196 Cal.App.4th at p. 1420.)

The parties agree that the first element of an owner's conveyance is not at issue. Bayasi contends he presented sufficient evidence of Atlas's continuous use of the PDS parcels to access the visible, permanent parking lot built on his parcel so as to raise a triable issue of fact on his claim of an easement by implication. Specifically, he asserts that Atlas's, and later the gym's, patrons openly and continuously traveled over the PDS parcels to the parking lot, that the use was not temporary or occasional, and the use continued after severance. Bayasi maintains: "It is irrelevant that the route was never used to then go further into the Bayasi Parcels to access the residential structures—what matters is that the route was used to get over the Bayasi property line. As explained in *Horowitz* [*v. Noble* (1978) 79 Cal.App.3d 120], if the owner of parcels A and B uses a road over parcel A for ingress and egress from a public highway to a building located on parcel B, a subsequent conveyance of parcel B by an instrument that fails to mention the road, passes an access easement across lot A for the benefit of lot B." Bayasi does not address the third element of reasonable necessity, asserting that defendants and the trial court did not address that requirement.

Defendants respond that the evidence is undisputed that Atlas made little use of the Bayasi parcels and any use it did make was not for its benefit. Citing to Brown's

deposition transcript submitted in opposition to their motion,[4] defendants assert the evidence is undisputed that Atlas's only use of the Bayasi parcels was the development of additional parking for the benefit of the businesses operating on the PDS parcels, and the lot was never used to access the remainder of the Bayasi parcels or their residential structures. They further argue that because access to the Bayasi parcels already existed via the 1954 easement, access over the PDS parcels was not reasonably necessary to the use and benefit of the Bayasi parcels.

There is no dispute that the paved parking lot portion of Bayasi's land was accessed on a regular basis via the PDS parcels during Atlas's ownership and the ownership of its successor owners. The relevant question, for purposes of implying an easement in Bayasi's favor, is whether Atlas and its successors obviously and permanently travelled a route through the PDS parcels that was reasonably necessary for the use of *Bayasi's land*, so as to permit an inference that the parties intended or believed that use would continue. The additional paved parking area was a permanent improvement to Bayasi's parcel No. 3, and there is no dispute that Atlas's patrons, and patrons of subsequent owners, regularly accessed that parking area from Hotel Circle South and the PDS parcels. This evidence permits an inference that the use was done in such a manner suggesting that it would continue. Evidence that the proposed easement

---

4      In making their point, defendants unhelpfully cite to the entirety (pages 906 to 964) of Brown's deposition transcript in the record. We are not required to search Brown's deposition for support for defendants' propositions. It is incumbent on counsel to cite to the specific page of the record for their propositions. (See Cal. Rules of Court, rule 8.204(a)(1)(C); *Guthrey v. State of California* (1998) 63 Cal.App.4th 1108, 1115.)

was obviously and permanently used in this manner for years, including the point at which Bayasi purchased the parcels, supports the element that the prior existing use was "either known to the grantor and the grantee, or [was] so obviously and apparently permanent that the parties should have known of the use . . . ." (*Larsson v. Grabach* (2004) 121 Cal.App.4th 1147, 1151-1152.)

Further, the evidence raises a triable factual issue as to whether the proposed easement via the PDS parcels was reasonably necessary for the beneficial enjoyment of the extended parking area on Bayasi's parcel No. 3. The question is whether traversing through the PDS parcels was reasonably necessary to provide access to *that area*. Evidence that patrons travelled to and used the additional parking area via that route meets that standard. It is not necessary to show there was no other access point; Bayasi was not required to demonstrate that the easement was a "strict necessity or the only possible way" to access the additional parking area. (*Thorstrom v. Thorstrom*, *supra*, 196 Cal.App.4th at p. 1421.) Under the circumstances, Bayasi has raised a triable factual issue as to whether he is entitled to an implied easement over the PDS parcels to the additional parking area on his parcel No. 3.

The fact Brown in his supporting summary judgment declaration states it was not Atlas's intent to benefit the Bayasi property does not change our conclusion. Evidence of Atlas's contrary intent may be drawn from the open and continuous use of the PDS parcels as a thoroughfare to that portion of Bayasi's parcel. Furthermore, " '[i]mplied easements are not based on the grantor's actual subjective intent, but rather on the parties' presumed objective intent as determined from the surrounding circumstances.' " (*Larsson*

17

*v. Grabach*, *supra*, 121 Cal.App.4th at p. 1154.) We do not resolve disputes in the evidence as to the parties' intent on summary judgment.

Accordingly, defendants are not entitled to summary judgment on Bayasi's claim for an easement by implication. We emphasize that ultimately, the existence and extent of the implied easement will be a matter for the trier of fact. The " 'extent of a servitude is determined by the terms of the grant or the nature of the enjoyment by which it was acquired.' " (*Thorstrom v. Thorstrom*, *supra*, 196 Cal.App.4th at p. 1421.) Intent is the fundamental criterion, and the trier of fact must consider the actual use being made of the dominant tenement at the time of the conveyance and the reasonably contemplated uses. (*Id*. at p. 1422; *Larsson v. Grabach*, *supra*, 121 Cal.App.4th at p. 1153.) The use of the easement cannot be altered to impose an unreasonable or unintended burden on the servient tenement. (*Thorstrom*, at p. 1422.) " '[T]he concern of the court in any case is not to increase the burden of the easement as it respects the servient tenement.' " (*Id*. at p. 1424.)

### IV. *Prescriptive Easement*

"A prescriptive easement is established by use of land that is (1) open and notorious, (2) continuous and uninterrupted, and (3) adverse to the true owner, and that is all of these things (4) for a period of five years." (*Windsor Pacific LLC v. Samwood Co., Inc.* (2013) 213 Cal.App.4th 263, 270, see also *Warsaw v. Chicago Metallic Ceilings, Inc.* (1984) 35 Cal.3d 564, 570; *Otay Water Dist. v. Beckwith* (1991) 1 Cal.App.4th 1041, 1045.) The use must be sufficient to "impart actual or constructive notice of the use to the owner of the servient tenement." (*Connolly v. McDermott* (1984) 162 Cal.App.3d

18

973, 977.) "The purpose of these requirements is to insure that the owner of the real property which is being encroached upon has actual or constructive notice of the adverse use and to provide sufficient time to take necessary action to prevent that adverse use from ripening into a prescriptive easement." (*Fogerty v. State of California* (1986) 187 Cal.App.3d 224, 238.)

Whether use is continuous and uninterrupted " 'depends on the nature of the easement.' " (*Fogerty v. State of California*, *supra*, 187 Cal.App.3d at p. 239.) " 'The use is sufficient if it occurs on those occasions when it is necessary for the convenience of the user.' [Citation.] 'If a right of way over another's land has been used for more than five years, it is not necessary, to make good such use, that the claimant has used it every day. He uses it every day, or once in every week, or twice a month, as his needs require. He is not required to go over it when he does not need it, to make his use of the way continuous. The claimant is required to make such reasonable use of the way as his needs require.' " (*Ibid.*, quoting in part *Hesperia Land etc. Co. v. Rogers* (1890) 83 Cal.10, 11; see also *Scott v. Henry* (1925) 196 Cal. 666, 670 [evidence showed that actual use of a water ditch "was not continuous in the sense that it was constant" in that plaintiffs ran water in the ditch for irrigation "whenever and as often as irrigation was necessary during the period from February, 1913, until April, 1918, and that they ran such water through said ditch at will and without interruption during said period. This would be sufficient to establish continuance of use"]; *Twin Peaks Land Co. v. Briggs* (1982) 130 Cal.App.3d 587, 593 ["whenever the respondent (and its predecessors) needed the roadway from time to time, it made use of it; this is 'a continuous use' "].)

19

Bayasi contends he presented evidence that he and his agents have used the PDS parcels to access his parcels as his needs required from at least January 2004 through October 2011, and that his use was sufficiently visible and open to impart constructive notice to defendants. In opposition to defendants' motion, Bayasi submitted his own declaration in which he stated that since June 1998, he had personally accessed the bottom of his parcels "on countless occasions" by using a paved driveway located within the PDS parcels, and had hired workers and companies to perform work on that portion of his parcels from January 2004 to October 2011. Attaching receipts, Bayasi described the nature and dates of the work, which included fire abatement, constructing retaining walls, excavating and installing a water pipe and sewer, and installing a fence. He also submitted declarations from Alan Korb and Bradley Wright, respectively owners of a landscape company and fence construction company, both of whom averred that Bayasi had frequently or regularly asked them to visit his parcels for described maintenance or construction tasks, and that during those times, they accessed the lower portion of the Bayasi parcels via a paved driveway located within the PDS parcels, which began at Hotel Circle South next to a gas station, continued south next to liquor store and hotel building, and then continued south next to a gym until reaching the lower portion of the Bayasi parcels. Korb stated he was asked to perform work from 2003 to 2011, and Wright stated he did work from 2001 to the time of his declaration. Korb used a blue pickup, equipment trailer and Bobcat front loader, as well as an excavator to perform his work. Wright and his crew used one or two flatbed trucks in performing their work.

20

Defendants suggest this evidence does not raise a triable issue of material fact; they rely on the fact that Bayasi admitted he never notified defendants or their predecessor that he was using the PDS parcels for access because he feared a lawsuit, and they maintain his use was only temporary or occasional, and not sufficiently open, visible and notorious given the use of the parking lot by "countless other vehicles and people using this area." They argue that as a matter of law, Bayasi's failure to communicate his use and claim of right to use in a an unambiguous and definitive manner prevents him from prevailing on his claim.

Defendants' arguments are unavailing. As to notice, Bayasi need only establish his use as would impart *constructive* notice, so that anyone viewing the PDS parcels would discover it. Thus, the mere fact Bayasi did not actually notify defendants or their predecessors of his use does not defeat his claim for a prescriptive easement as a matter of law, which is defendants' burden to establish as a threshold matter before the burden shifts back to Bayasi. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460; *Securitas Security Services USA, Inc. v. Superior Court* (2011) 197 Cal.App.4th 115, 119-120.) As for defendants' claim that Bayasi's use could not be open, visible or notorious given the other vehicles and persons on the parking lot, it fails for the absence of evidence as to the frequency or types of uses of the parking lot by other persons or vehicles in the area.[5] Consequently, defendants did not establish as a threshold matter

_____

5       As to the extended parking area on Bayasi's parcel No. 3, defendants' separate statement states: "In developing Mission Valley Resort, Atlas determined that the parking was insufficient to meet the needs of the various businesses, and specifically the

21

that Bayasi's uses blended in with other uses or were to indistinguishable as to preclude a finding of constructive notice. Additionally, "[w]here road use indicates to the owner that it is under a claim of right, the fact that the road is used by others as well does not impair such claim. [Citation.] Thus, exclusiveness of user is not essential to acquisition of a prescriptive easement." (*Applegate v. Ota* (1983) 146 Cal.App.3d 702, 710.)

Though given these flaws, it is apparent defendants did not meet their threshold burden to establish Bayasi cannot prove the elements of a prescriptive easement, we conclude nevertheless that even if they had, Bayasi's evidence raises an issue for a jury on this question, as well as the question of whether Bayasi's use was sufficiently continuous and uninterrupted, both factual inquiries. (*Warsaw v. Chicago Metallic Ceilings, Inc.*, *supra*, 35 Cal.3d at p. 570 ["Whether the elements of prescription are established is a question of fact"]; *Taormino v. Denny* (1970) 1 Cal.3d 679, 687; *Applegate v. Ota*, *supra*, 146 Cal.App.3d at p. 709.) Accordingly, defendants are not entitled to summary judgment on Bayasi's claim of prescriptive easement.

---

health club" and that "[t]o correct this problem, Atlas extended the parking lot next to the [gym] onto the Bayasi Parcels." Defendants state that the additional parking lot "was only used by Atlas as parking for the customers of the [gym] and other businesses operating on the PDS Parcels, not for the benefit of the Bayasi parcels."

DISPOSITION

The judgment is reversed.  On remand the superior court is directed to enter an order granting summary adjudication of Mohamad Ziad Bayasi's cause of action for an easement by necessity, and denying summary adjudication of Bayasi's causes of action for easements by implication and prescription.  The parties shall bear their own costs on appeal.

O'ROURKE, J.

WE CONCUR:

McDONALD, Acting P. J.

McINTYRE, J.

23